THE STATE v. FRANK CAREY, Appellant.—1 S. W. (2d) 143.

Division Two, December 31, 1927.

814

*J. H. Whitecotton* for appellant.

*North T. Gentry,* Attorney-General, and *A. M. Meyer,* Special Assistant Attorney-General, for respondent.

WALKER, J.—The appellant and two others were jointly charged with burglary and larceny. Appellant was granted a severance, and prior to his trial the two others entered pleas of guilty and were sentenced to imprisonment in the penitentiary. Upon a trial to a jury appellant was convicted under each charge, and sentenced to two years' imprisonment in the penitentiary for burglary and two years for larceny. From this judgment he appeals.

At about 8:30 o'clock P. M., November 23, 1925, Odell's jewelry store in Hannibal was burglarized and a quantity of jewelry stolen therefrom. Thomas and Hagerman, who were charged jointly with

the appellant, forced an entrance with an iron bar through a rear window into the jewelry store. While Hagerman stood guard on the outside Thomas entered the store and took therefrom jewelry of the value of $4000. Both Hagerman and Thomas testified that the appellant co-operated with them in planning the crimes; that he stood guard in an alley near the rear window of the store while Hagerman was on the lookout in front and Thomas was in the store taking the jewelry; that immediately thereafter the three went to Thomas's flat and agreed upon an equal division of the jewelry, which consisted largely of finger rings. On November 25th, the second day after the commission of the crimes, Thomas and the appellant went to Milwaukee and tried to dispose of a number of the rings, but failed and returned with them to Hannibal. On November 30th, Thomas and Hagerman made a trip to St. Louis, but were unable to dispose of the rings, which, until the return from St. Louis, had been in the possession of Thomas. Thereafter it appears that there was a division of the property in accordance with the agreement between the appellant and the other defendants, as shown by their subsequent possession of rings identified as a part of those stolen and which they had each either disposed of or had attempted to do so. The two other defendants testified that while they were all in jail awaiting trial the appellant offered to compensate them liberally if they would exonerate him from participation in the crime and threatened to kill them if they refused to do so. It was shown that twelve or fourteen of the rings identified as a part of those stolen were delivered by the appellant to one Finch the night before appellant was arrested.

Appellant's defense was an alibi. He kept a lunch-stand near where the jewelry store was located. He testified that he went to his supper at about 6:15 P. M., the day of the commission of the crime, and did not leave home until about nine o'clock. When he returned Hagerman came in and told him Thomas wanted to see him; he went to Thomas's flat, where they had the rings from Odell's store on display, and after repeated requests from Thomas he agreed to take, and did take, the latter in his car to Milwaukee. To reimburse him for this trip Thomas gave him one of the rings; that at the request of Thomas, the night before their arrest, he delivered twelve or fourteen of the rings to one Finch; that Thomas said he had traded these rings to Finch for some furniture. The appellant's father and mother and his employee at the lunch-stand corroborated his statement as to his whereabouts the night of the crime until nine o'clock, P. M. Others testified to the contrary, that they saw him at his lunch-stand at about seven o'clock, P. M., the night of the crime and one of them stated that he saw appellant at Thomas's flat at about seven o'clock that evening. In addition, a woman named Harris, who lived with Thomas, testified that appellant was at Thomas's flat with the latter

and Hagerman when the jewelry was divided at about seven o'clock the evening after their return from St. Louis.

I. The legality of the act of the assistant prosecuting attorney in filing the information is challenged; and as a consequence the validity of the information. It is conceded by the appellant that the assistant was appointed under the authority of Sections 751, 752 and 753, Revised Statutes 1919.

Section 751 confers the power of appointment of an assistant upon the prosecuting attorney, defines the qualifications of the appointee and declares his official liability to be those of the prosecuting attorney.

Section 752 prescribes how the appointment shall be made and the manner in which the appointee shall qualify for the discharge of his duties.

Section 753, so far as the same relates to the matter at issue, provides that the assistant shall perform the duties of the prosecuting attorney, (1) when the latter is sick, (2) absent from the county, or (3) engaged in the discharge of the duties of his office and cannot attend.

Under the facts we are only concerned with the third subdivision of the section. It is conceded by the appellant that at the time the information was filed the prosecuting attorney was "at the court house engaged in the performance of his duties." This being true, the presumption will obtain that the discharge of those duties was such that he could not attend to the filing of the information and that the assistant was, under the statute, within the purview of his authority in filing it. Other than the concession of the appellant there is no showing as to the character of the duties which were being performed by the prosecuting attorney at the time the assistant filed the information. No such showing could properly have been made because the time and manner in which a prosecuting attorney discharged his official duties are details which the law intended should be left to his exclusive regulation. "Such matters," as was held in State v. Hynes, 39 Mo. App. 569, "cannot be investigated collaterally with a view to determining whether an assistant prosecuting attorney had authority to file an information. Delay and expense would be incurred in the investigation of such collateral matters and would open up an inquiry the sole effect of which would be to obstruct the administration of the law." Under the facts in this case it would require the determination of the extent to which a prosecuting attorney should be engaged in other official duties to give jurisdiction to his assistant to act.

In affirming the ruling in the Hynes case, supra, the Kansas City Court of Appeals in Browne's Appeal, 69 Mo. App. 159, said: "The existence of the conditions under which the assistant prosecuting at-

torney may act must be left to the decision of the prosecuting officer and cannot be raised in a collateral action.'' When, therefore, either condition defined in the statutes arises, an assistant prosecuting attorney may perform any act within the range of the duties of that office. This conclusion is in harmony with a well established rule in construing statutes defining the powers of public officers that ''where a public officer is authorized to appoint a deputy, the authority of that deputy, unless otherwise limited, is commensurate with that of the officer himself, and, in the absence of any showing to the contrary, it will be so presumed. Such a deputy is himself a public officer, known and recognized as such by law. Any act, therefore, which the officer himself might do, his general deputy may do also.'' [Mechem's Offices and Officers, sec. 570.]

Furthermore, in discussing the question here under review, in State v. Weeks, 88 Mo. App. 263, the Kansas City Court of Appeals hold that ''where an information is filed in a criminal court by an assistant prosecuting attorney (as was the case at bar), it will be presumed to have been filed by a proper official and that he had been duly appointed by the prosecuting attorney under the authority of Section 4975, Revised Statutes 1899 (now Sec. 751, R. S. 1919), in the absence of any record to the contrary.''

II. Aside from the foregoing no question is raised as to the sufficiency of the information. In the discharge of our duty and in conformity with our rulings upon the same, under the statute (Sec. 4106, R. S. 1919; State v. Potter, 285 S. W. 424, 278 S. W. 712; State v. Cook, 274 S. W. (Mo.) 356), we have examined the information and find that it charges burglary and larceny in a single count as authorized under Section 3297, Laws 1921, page 196, and that its material allegations are the same as those in the following cases: State v. Carey, 311 Mo. 461, 278 S. W. 719 and State v. Tipton, 307 Mo. 500, 271 S. W. 55, which we have held properly charged the offenses denounced in the statute.

III. It is further contended that there was no proof of the ownership of the building charged to have been burglarized, and that defendant's instruction marked B directing the jury to find the appellant not guilty of burglary should have been given.

This instruction is not preserved in the record and the only reference to it in the motion for a new trial is found in the fourth paragraph of same to this effect: ''because the court erred in refusing to give the defendant's peremptory instructions marked A, B and C, said instructions being in the nature of a demurrer to the evidence.''

Upon the assumption that the alleged error has been properly preserved to afford the appellant the right to a review of the testimony, we have examined the same. Aside from the material facts set forth in the foregoing statement of the case, ample in their nature to constitute substantial evidence of the commission of the crimes by the appellant, the information charges that the building burglarized was "a certain store, shop or building of the Odell's, Incorporated, a corporation under the laws of Illinois." The manager of the store testified that in the building burglarized was located at the time a jewelry store "of the Odell's Incorporated Company" and that this company was incorporated under the laws of the State of Illinois; that the stock of goods therein consisted principally of jewelry and that there was stolen therefrom at the time of the burglary, goods, mostly rings, of the value of more than $4000. This testimony, with that referred to in the statement, sustains the averments of the information and constitutes substantial evidence of the ownership of the building burglarized. Of the ownership of the goods stolen no contention is made. There is no question as to the rule that it is necessary to allege and prove the ownership, not only of the building burglarized, but of the goods alleged to have been stolen. [State v. Jones, 168 Mo. l. c. 402, 68 S. W. 566.] The latter, as we have shown, has been proved. The averment in the information, that the building burglarized was "of the Odell's Incorporated" was a sufficient averment of ownership to meet the requirements of the rule, in that the word "of," as used in the above quoted phrase, was indicative of possession (Webster's Dict.; State v. King, 95 Md. 125; Jordan v. State, 142 Ind. 422; Davis v. State, 38 Ohio St. 505), or of such ownership as will authorize occupancy of the building burglarized. This conclusion is supported in a well considered case by WHITE, P. J., in which it was held that proof of ownership of a building burglarized does not refer to the title but the occupancy. [State v. Harrison, 285 S. W. (Mo.) l. c. 87 and cases cited.]

In State v. McGuire, 193 Mo. l. c. 226, 91 S. W. 939, cited with approval in State v. Harrison, supra, it is held, in effect, "that although there may be no direct evidence of the ownership in Lee Stewart of the building burglarized, as alleged in the information, there was an abundance of evidence that he was in the actual possession of it at the time of the burglary and such evidence sustained the allegation of ownership in him." Finally in that case it is succinctly stated that: " 'In burglary, ownership means any possession which is rightful as against the burglar,' " citing cases. The unqualified statement therefore in State v. Jones, 168 Mo. l. c. 402, and subsequent cases of like tenor, that, in the presence of an averment of ownership in the charge there must be proof of same, is subject to the modification in construing it that such proof will be deemed sufficient if it shows a rightful possession by the occupant as against the person

charged with the burglary. The correctnesss of this interpretation of the rule in the Jones case is demonstrated by the reasons that may be urged in·its support. These reasons, briefly stated, are: (1) for the purpose of showing that the house alleged to have been burglarized was not the dwelling of the accused; and (2) for the purpose of so identifying the offense as to protect the accused from a second prosecution for the same offense. [State v. Trapp, 17 S. C. 467, 43 Am. Rep. 614.]

In the instant case the averment in the information as to ownership and the proof of same meet both of the foregoing requirements and the appellant's contention must therefore be overruled. In reaching this conclusion we have not been unmindful of the statute (Sec. 3907, R. S. 1919), which provides, among other things, that where there is a variance between the indictment or information and the proof in the name or description or ownership of any property described therein such variance shall not be deemed grounds for acquittal of the defendant unless the trial court shall find that such variance is material to the merits of the case and prejudicial to the defendant. It is true that there is no variance in this case. The averment of ownership in the information is substantially the same as that shown by the proof. The reference to the statute, however, is pertinent as showing, in view of the cases cited, that the title to the building charged to have been burglarized is not a characteristic of the offense, but merely serves to designate with certainty the house that was broken into and entered, that the defendant may be enabled with certainty to deny the offense as charged.

In finally disposing of this contention it is not inappropriate to note the distinguishing features between the cases cited by the defendant in this behalf and those in the case at bar.

In State v. Winer, 263 Mo. 356, a conviction of receiving stolen goods was held invalid in the absence of proof of the incorporation of the railroad company from which it was charged the goods were stolen.

In State v. Henschell, 250 Mo. 1. c. 269, it is held an information charging burglary and larceny from a company must, to be valid, state whether the company was a corporation or a partnership.

In State v. Hammons, 226 Mo. 604, it is held that an information which did not charge the ownership of the burglarized building in some person capable of owning the same will not support a conviction.

In State v. Decker, 217 Mo. 1. c. 322, it was held that proof of the existence of a corporation may be established by general reputation or any of the methods prescribed in the statute. [Now Sec. 4032, R. S. 1919.]

In State v. Schultz, 295 S. W. (Mo.) 535, it was held that the averment of the ownership of the building in an indictment for burglary which simply described it as "a store building, known as House's

Hardware & Dry Goods Store, located," etc., was not a sufficient allegation of ownership to sustain a conviction.

In State v. Simpson, 295 S. W. (Mo.) 739, an indictment for burglary was held fatally defective which failed to allege some form of ownership in the building charged to have been burglarized, the averment being that it was "a building located at 217 West 9th Street in Kansas City, Jackson County, Missouri, and known as the Savoy Pharmacy."

In each of these cases, except that of State v. Winer, it will be noted that the conviction was not sustained because of the lack of an averment in the charge of the ownership of the building burglarized. The information in the case at bar, as we have shown, is not defective in this respect and it is not so contended nor is the proof in support of that averment lacking. From no point of vantage therefore are the cases cited by appellant apposite.

IV. The motion for a new trial does not preserve the alleged error in giving instructions numbered one and two for the State.

Despite the failure to preserve objections to these instructions it appears that there was no conflict between defendant's Instruction H and Instructions 1, 2 and 3 given for the State. The point made is that the instructions given for the State were upon the theory that the jury need not find that defendant was present at the commission of the crime if the jury found a conspiracy; and Instruction H, given for the defendant, was simply a converse of Instructions 1, 2 and 3 given for the State.

It is not disputed that there was ample evidence to warrant the giving of instructions on the theory that defendant conspired with his co-defendants. The first instructions summed up the State's theory, hypothesizing the State's evidence, and directed a verdict.

The instruction given for appellant did not hypothesize the evidence supporting his theory, and it imposed a greater burden on the State than the law requires. It could not have harmed the appellant and was not error. [State v. Howe, 287 Mo. 1. c. 10; State v. Pinson, 291 Mo. 1. c. 338.] Erroneous instructions not prejudicial do not authorize a reversal. [State v. Bird, 286 Mo. 593.]

No error complained of has been found to be prejudicial to the appellant, and the judgment of the trial court is affirmed. All concur.