THE STATE v. MAJOR DUNCAN, Appellant.—80 S. W. (2d) 147.

Division Two, March 5, 1935.

*N. C. Hawkins* for appellant.

*Roy McKittrick*, Attorney General, and *Wm. Orr Sawyers*, Assistant Attorney General, for respondent.

ELLISON, J.—The appellant, a negro twenty-eight years old at the time of the trial, and designated in the information by the name of Major Duncan, was charged with burglary. Specifically the State's evidence was that he broke into a barber shop at Hayti in Pemiscot County conducted by W. B. Baker and stole two razors and three pairs of hair clippers. He was convicted and his punishment assessed by the jury at two years' imprisonment in the State penitentiary. He has filed no brief in this court but his motion for new trial contains a number of assignments which we shall take up for consideration.

Baker, who operated the barber shop, testified he had known the appellant ever since 1920. He said that on November 28, 1932, the

appellant and another negro came to the shop stating they had no money and asked him to give them a haircut free of charge. He cut the hair of both of them, and when told they were hungry and had had no breakfast he locked up his shop by hooking the side door screen and went to his home to get some food for them. He left the appellant and several other negroes seated out in front. He was away about twenty minutes. When he returned all the negroes were gone, the screen door had been torn open, the lock on the drawer in which the tools were kept had been beaten off, and the aforementioned razors and hair clippers were missing.

About an hour later Constable Roy Wyrick found the appellant loafing at a cotton compress in Hayti. He arrested him and found on his person the missing clippers and razors and a pair of scissors. On being taken before a justice of the peace the appellant admitted his guilt, waived preliminary hearing and told the constable he wanted to plead guilty as soon as the circuit court convened. It appears that about a month afterward while awaiting trial he escaped from the Pemiscot County jail and went across the State line to Blytheville, Arkansas. From there he was brought back to Missouri by Constable Wyrick. Mr. Wyrick testified the defendant on trial under the name of Major Duncan was the negro he arrested for the offense, placed in the Pemiscot County jail, and brought back from Arkansas. The justice of the peace said the appellant was the negro who appeared before him, and there was other substantial evidence that the Major Duncan charged by the information and the appellant were the same person.

The prosecuting witness, Baker, testified the appellant had two names, Major Duncan, the name by which he was charged, and Leon Austin; that he was called sometimes by one and sometimes by the other, and that he called himself by both names. One witness, Kelley, said that while he and the appellant were confined in the Pemiscot County jail a week or so before the trial the appellant told him not to address him as Major but to call him Leon. Kelley also said the appellant declared that if the barber, Baker, did not testify against him, he would beat the case; and that when he got out he would kill the witnesses who appeared against him.

The record recites that when brought up for arraignment the appellant informed the court and also the prosecuting attorney that "his true name is Leon Austin." He then waived formal arraignment and pleaded not guilty. His defenses on the facts were: that he was not the person charged by the information; an alibi; and that no burglary was committed. On the question of his identity his attorney, Mr. N. C. Hawkins, a member of the Pemiscot County Bar appointed by the court to represent the defendant, testified very

earnestly that the appellant was a different negro from the Major Duncan against whom the prosecution had been instituted. He had talked to both negroes in his capacity as their attorney, and he said there was a marked difference in their height, weight, voices and other physical characteristics. Clyde Maloney, a deputy sheriff who had fed the prisoners in the Pemiscot County jail, likewise testified Major Duncan, the original defendant, was not the same person as the appellant. Mr. C. F. Cooper, an attorney of Blytheville, Arkansas, who, also, represented the appellant at the trial, said the appellant was named Leon Austin; that he had known the Austin family at Blytheville for more than two years; that appellant was never called Major Duncan, and that he had recently theretofore been tried and acquitted of a criminal charge at Blytheville under the name of Leon Austin. The appellant, his father and two other negroes from Blytheville. all swore appellant's name was Leon Austin, not Major Duncan; that he was never called by the latter name, and that he was in and around Blytheville when the Baker barber shop at Hayti was broken into, and for several months preceding and following that event. Appellant denied he was the negro who was arrested and charged with the burglary, and who later escaped from jail. Mr. Hawkins, the appellant's attorney, swore that Baker, the proprietor of the barber shop, told him he had not locked the shop when he went to his home to get food for the two negroes, and that he left them inside of it. This, Baker denied.

The appellant's motion for new trial recites that the court administered an oath to the talesmen on their *voir dire* examination "to answer such questions as may be propounded to you touching your qualifications to serve as jurors, in the case wherein the State of Missouri is plaintiff and Major Duncan is defendant;" and that the twelve jurors selected were sworn "to well and truly try the case wherein the State of Missouri is plaintiff and Major Duncan is defendant." The record brought up does not show this to be the fact, and the motion for new trial is not verified and does not prove itself. But the record does show the following. The court gave six instructions at the request of the State and also supplied the jury with two blank forms of verdict, all of which were captioned "State of Missouri, plaintiff, v. Major Duncan, defendant;" and the text of the first of these instructions and the two blank forms of verdict referred to the appellant as "the defendant, Major Duncan." The verdict returned by the jury likewise was captioned "State of Missouri, plaintiff, v. Major Duncan, defendant" and recited "We, the jury in the above entitled cause, find the defendant, Major Duncan, guilty," etc. The appellant's motion for new trial was captioned "State of Missouri, plaintiff, v. Leon Austin, defendant," and referred to him by

the name of Leon Austin; and his affidavit for appeal to this court was similarly captioned.

■ I. The main point in appellant's motion for new trial is that "the court erred in failing and refusing to give this defendant a trial and try him under his true name, Leon Austin, as required by law and Section 3561, R. S. 1929." This section is as follows:

"If a defendant be indicted by the wrong name, unless he declare his true name before pleading, he shall be proceeded against by the name in the indictment. If he allege that another name is his true name, it must be entered in the minutes of the court; and after such entry, the trial and all other proceedings on the indictment shall be had against him by that name, referring also to the name by which he is indicted, in the same manner, in all respects, and with the same consequences as if he had been indicted by his true name."

This case is prosecuted by information, not by indictment. But Section 3509, Revised Statutes 1929, provides that all proceedings upon any information filed in a court of record shall be governed by the law and practice applicable to trials upon indictments. The fact that this case is based on an information instead of an indictment therefore will not prevent the application of the above-quoted provisions of Section 3561 thereto. The record shows the appellant did in open court declare his true name to be Leon Austin before pleading not guilty. Thereafter the trial did not proceed against him by that name. On the contrary, the State's evidence, the court's instructions, the forms of verdict, and the verdict returned by the jury all designated him by the name Major Duncan and not as Leon Austin. Was this reversible error? We think not.

In the absence of a contrary statute the rule generally is (or at least formerly was) that if a defendant be indicted by a wrong name either christian name or surname, he may raise the point before pleading not guilty, by a plea in abatement upon which he is entitled to a jury trial if issue be joined thereon by the State. [16 C. J., sec. 745, p. 409; 1 Chitty, Criminal Law (5 Am. Ed.), pp. 202, 445, 448; 2 Wharton's Criminal Procedure (10 Ed.), sec. 1351, p. 1810; 2 Bishop's New Criminal Procedure (2 Ed.), sec. 791, p. 613 et seq.] The purpose of the rule is, or was, to protect the defendant on a plea of former jeopardy thereafter.

To prevent such dilatory pleas, Section 3561 was enacted by the General Assembly in 1855, Revised Statutes 1855, section 25, page 1176. Five years later, in 1860, this court was called upon to discuss the purpose and effect of the statute in State v. Schricker, 29 Mo. 265. In that case the defendant was indicted by the name of William Shucker. He pleaded in abatement that his name was William Schricker and prayed to be discharged. Instead, the court, fol-

lowing the new statute, entered his true name on the minutes and subsequent proceedings were had against him by that name. He was convicted and appealed. In his brief here the appellant contended the statute was unconstitutional. He argued that under it if a sheriff should arrest and bring in B to answer an indictment returned against A, all that B could do would be either to plead not guilty and go to trial on the indictment as it was, or to declare his true name before pleading and then stand trial under that name. In other words, the appellant asserted the statute would deprive B of the opportunity of interposing a plea of misnomer that he was not the person indicted, and would force him to trial under an indictment found against another person.

Answering these objections the opinion of the court, delivered by Judge Scott, said: "The law prosecutes the person of the offender, being satisfied that when the party really guilty is made to suffer there can be no great evil in misnaming him. The idea of the counsel is founded on a misconception of the nature of a plea of misnomer. It does not deny the identity of the person of the offender, but admits that he is the person indicted but by a wrong name. A plea denying the identity of the person would amount to the general issue." It will thus be seen that at an early date this court confined the application of the statute to instances where the defendant on trial is the person actually indicted. It dispenses with a plea in abatement for a misnomer only where there is a defective naming of the party charged, and therefore does not bar a defendant from asserting he is not the person indicted or intended to be indicted.

But one statement in the above excerpt appears to be open to challenge, or, at least, it is inconsistent with the conclusion reached by the opinion. It says "a plea denying the identity of the person would amount to the general issue." In a criminal prosecution a plea of the general issue is a plea of not guilty, 16 Corpus Juris, section 722 (5), page 394; 46 Corpus Juris, page 497. And with all deference to the great judge from whose pen the foregoing statement fell seventy-five years ago, if the quoted language means that a defendant can deny he is the person indicted only by a plea of not guilty, and that he must go through the ordeal of a trial on the merits, we think the statement is erroneous. In People v. Bogdanoff, 254 N. Y. 16, 171 N. E. 890, 69 A. L. R. 1378, 1386, the New York Court of Appeals said: "The accused may at any time, at least before conviction, assert his constitutional rights to be discharged from custody upon a charge of felony where it does not appear that the grand jury has indicted him upon the charge for which he is held. If challenge is made on that point the State must meet that challenge." So, also, an annotation in 79 American Law Report, page 220, declares that where the name of another person is substituted (even

by mistake) for the defendant's name in the charging part of an indictment, information or accusation, "it is universally held that the indictment, information or accusation is fatally and incurably defective." The annotation cites the following Missouri cases, which sustain it, all of them having been decided since the enactment of Section 3561, in 1855: State v. Edwards, 70 Mo. 480; State v. Manning, 168 Mo. 418, 68 S. W. 341; State v. Stephens, 199 Mo. 261, 97 S. W. 860.

A denial by a defendant that he is the person who committed the offense charged, or that an offense was committed, a plea of the Statute of Limitations, or of former jeopardy (Sec. 3664, R. S. 1929), is one thing. All these are answers *to* the indictment. But a denial that the defendant is the person against whom the indictment was returned is a very different thing. The latter amounts to a contention that no indictment has been found against *him* as a basis for the prosecution, which is wholly aside from the question of his guilt. In our opinion a defendant is entitled to raise that point before entering his plea to the indictment by plea in abatement, not withstanding Section 3561. [See Johnson v. The State, 7 Ga. App. 551, 67 S. E. 224; 16 C. J., sec. 742, p. 406.] If the State joins issue on the plea in abatement and a question of fact is raised, that issue, it seems, may be tried to the same jury that hears the main case; but it must be separately submitted. [16 C. J., sec. 751, p. 414; State v. Manning, 168 Mo. l. c. 429, 68 S. W. l. c. 344.] He may also raise the point at any time after pleading to the indictment at least before conviction in any appropriate manner.

But the appellant here did not file a plea in abatement. In the beginning he apparently attempted to invoke the provisions of Section 3561. When brought in for arraignment he informed the court his name was Leon Austin, not Major Duncan, and then immediately entered a plea of not guilty. But in meeting the State's case on its merits it developed that he did not concede he was the person charged by the information. He and his counsel maintained another negro had committed the offense (if any), had been arrested therefor, informed against, broken jail and fled. They asserted the appellant was a stranger to the whole court proceeding until the officers went to Arkansas and, through a mistake in identity, brought him back and substituted him for the real defendant. On this state of facts he was not entitled to invoke Section 3561. He mingled the evidence as to his identity with testimony tending to prove an alibi. The State adduced substantial evidence that he was the person charged in the information and that he committed the offense alleged. The jury so found. There was no error in this, and he is bound by the result.

608

■ II. The information alleged that the appellant broke into and entered "a certain building of one W. B. Baker." Instruction No. 1 for the State submitted to the jury the question whether the appellant did break into and enter "a certain building belonging to W. B. Baker." The prosecuting witness, Baker, testified that the building was owned by one Perkins who was renting it to one Taylor for use as a barber shop. Baker said he was working for Taylor. He also testified he was operating the shop. Appellant makes the point in his motion for new trial that there was a total failure of proof that the building belonged to Baker as alleged in the information and hypothesized instruction. We do not think so. As is said in State v. Harrison (Mo.), 285 S. W. 83, 87, "the ownership of the building in a burglary case does not mean the title, but the occupancy." [See, also, State v. Carey, 318 Mo. 813, 818, 1 S. W. (2d) 143, 146; State v. Jeffords (Mo.), 64 S. W. (2d) 241.] The State's evidence showed Baker was in rightful possession of the premises operating a barber business there. This was sufficient.

III. As stated above, the charging part of the information alleged that the appellant broke into and entered "a certain building" of one W. B. Baker. But there was a further averment that the breaking and entering was with the intent to steal the goods, merchandise and valuable things "in the said store building." (Italics ours.) The State failed to prove the building was a store building. In fact the prosecuting witness, Baker, admitted on cross-examination it was not a "store house," and there is no testimony in the record other than that it was a barber shop. Appellant's motion for new trial assigns that the verdict should be set aside for want of proof sustaining the allegation in the information that the building was a store building.

There is no merit in this assignment. The charging part of the information does not say the building was a store building. And it makes no difference whether it was or not. The statute, Section 4048, Revised Statutes 1929, provides that "breaking and entering any building, the breaking and entering of which shall not be declared by any statute of this State to be burglary in the first degree," shall be burglary in the second degree. In State v. Stewart, 329 Mo. 265, 270, 44 S. W. (2d) 100, 102, it was held the statute was broad enough to include even church and school buildings. There was no question about the identity of the building and the appellant's defenses on the facts merely went to the point that if the burglary was committed he was not the culprit. He was not prejudiced by the failure to prove the building was a store building, and under Section 3562, Revised Statutes 1929, his conviction is not invalidated thereby.

IV. The information charged that "divers goods, merchandise and valuable things were kept for sale and deposited" in the building. The State's Instruction No. 1 among other things submitted the question to the jury whether "divers goods, chattels, and various things, of any and some value were kept" in the building. The evidence for the State did not show that any goods and merchandise were kept in the barber shop. The proof on this point was that the barber shop was equipped with two chairs and had drawers in which barber tools were deposited, but the prosecuting witness Baker admitted on cross-examination that "he didn't keep anything in there for sale except shaves and haircuts." He did sell such things as shampoos and tonics, but even these only when applied to the heads of patrons as a part of the service rendered. Also there was no proof of the value of any of the chattels in the barber shop, including the scissors and clippers stolen. The motion for new trial assigns error in that there was a failure to prove the particular allegations of the information above mentioned; and a failure to prove the value of anything in the building.

These assignments cannot be sustained. Section 4048 declares it to be burglary in the second degree to break and enter a building wherein "there shall be at the time any human being or any goods, wares, merchandise or other valuable thing kept or deposited, with the intent to steal or commit any crime therein." The section is not limited to a requirement that goods, wares or merchandise be kept for sale in the building. On the contrary if any valuable thing is kept or deposited there the act of breaking and entering the building is burglary. This point was expressly decided in State v. Helms, 179 Mo. 280, 78 S. W. 592, soon after the first enactment of the statute in its present form (so far as concerns the point here under consideration) by Laws 1899, page 161. In that case it was held to be burglary within the statute to break and enter a chicken house where chickens were kept, even though they were not kept for sale, and ranged the premises in the daytime, going into the chicken house at night of their own volition, to roost.

Neither was it necessary to prove in terms that the scissors, clippers, razors, barber chairs and other equipment in the barber shop which was operated as a going concern, had some value. The jury were entitled to infer that fact. The law is well settled that even in an indictment charging burglary *and larceny* it is unnecessary to state the value of the goods stolen, since larceny committed in the perpetration of a burglary is a felony irrespective of the value of the thing stolen. [State v. Yandle, 166 Mo. 589, 594, 66 S. W. 532, 533.] In such circumstances the value of the property stolen is immaterial, so long as it has some value. If, under an indictment or information charging burglary and larceny, the defendant be acquitted of

the burglary but convicted of the larceny, the value of the property stolen would become material because it would be determinative of whether the defendant should be convicted of grand larceny or petit larceny. [State v. Nicholas, 222 Mo. 425, 431, 121 S. W. 12, 13-14.] But in the instant case the appellant was neither charged nor convicted of larceny. He has no just ground for complaint. Indeed, considering the evidence and the verdict of the jury, it was fortunate for him that he was not tried for the larceny as well as the burglary.

V. The court gave an alibi instruction for the State. The appellant's motion for new trial does not challenge the form of the instruction but assigns that the giving thereof was error because he did not base his defense on the fact that he was not present at the time and place of the commission of the burglary, but put it on the ground that he was not the person arrested for the offense and charged therewith by the information. This assignment is not good. It is true one of the appellant's defenses, and perhaps the main one, raised the question of his identity with the accused. But his evidence did not stop there. He and several of his witnesses testified that he was in Blytheville, Arkansas, at the time the barber shop in Hayti, Missouri, was broken into. If the jury had believed that fact they could and would have acquitted him. The giving of an instruction on alibi was proper.

VI. The court gave an instruction for the State on flight as follows:

"The court instructs the jury that if you believe from the evidence in this cause that the defendant, immediately or shortly after the time of the alleged burglary, fled from the County of Pemiscot and State of Missouri, for the purpose and with the intent to avoid arrest by the officers of the law and trial for such alleged burglary, such flight should be considered by you, in connection with all the other evidence in the case, in determining the question of the defendant's guilt or innocence. But if you do not believe that he fled or attempted to flee for the purpose, of avoiding arrest or trial, but that he went away for some other purpose, then such act on his part should not be considered as any evidence against him."

The motion for new trial assigns error in the giving of this instruction on three grounds: (1) because there was no substantial evidence that the defendant immediately or shortly after the time of the alleged burglary fled from Pemiscot County, Missouri, or that he fled at all; (2) that there was no evidence from which the jury could infer the motive of such flight, if any; (3) that the instruction assumes the defendant fled, and submits to the jury only the question of his motive in fleeing.

611

The evidence for the State was that the appellant was arrested about an hour after the burglary was committed, and that he was placed in the Pemiscot County jail where he remained about thirty days. Also substantial evidence was produced that he escaped from jail. The time of the escape is not clearly fixed by the evidence, but the inference is that it was at the conclusion of the thirty days' confinement just mentioned. Neither is the State's showing clear that appellant fled from Pemiscot County as soon as he got out of jail. There was no testimony that a search was made for him in the county and that he was not found. The State's proof on this point merely was that one of the officers went to Blytheville, Arkansas, the day the appellant escaped from jail but did not find him. Sixty or ninety days later the officer went back to Blytheville and found him in jail down there. But since the appellant's own evidence was that he had been in and around Blytheville all the time, we conclude the record as a whole is sufficient to support an inference that he fled from Pemiscot County to Arkansas as soon as he got out of the Pemiscot County jail.

But conceding, as we have, that the State produced sufficient evidence to make a prima facie case of flight, the instruction is still loose and inaccurate. It submits the question whether the appellant "immediately or shortly after the time of the alleged burglary" fled from Pemiscot County for the purpose of avoiding arrest and trial for the alleged burglary. There was no evidence whatever that the appellant fled immediately after the commission of the burglary, and there is no evidence that he fled to avoid arrest. On the contrary, he had already been arrested and had been in jail at least thirty days before he fled. Perhaps his flight after the lapse of that time would still be near enough to the time of the alleged burglary to say, as the instruction does, that it was "shortly" thereafter. But since the cause must be reversed and remanded for other reasons presently to be stated, on another trial the instruction should be recast to conform to the facts.

We do not agree with appellant's contention that there was no evidence from which the jury could infer or determine the motive of his flight. His unexplained escape from jail and flight from the county, taken in connection with the other facts in evidence was a circumstance that the jury could consider as tending to disclose an intention to avoid a trial because of a consciousness of guilt. [16 C. J., sec. 1064, p. 552; State v. Meininger, 312 Mo. 525, 546, 290 S. W. 999, 1005.]

But in our opinion it was prejudicial error to give the instruction for the third reason assigned in appellant's motion for new trial, namely, because it assumes he fled, and submits to the jury only the question of his motive in fleeing. It will be noted the instruction

612

does not direct the jury to determine whether the appellant fled *and*, if he did, whether his purpose was to avoid a trial. Boiled down, it says if the jury believe he fled for the purpose of avoiding arrest and trial they can consider the fact; but if they believe he fled for some other purpose, they cannot consider it. The instruction is practically a counterpart of one approved in State v. Turner (Mo.), 274 S. W. 35, 36. In that case, however, the defendant did not deny or make any attempt to explain his flight, and it may be for that reason the instruction was passed without consideration of the criticism here made.

■ VII. The court gave an instruction for the State on extra-judicial statements made by the appellant, as follows:

"The Court instructs the jury that if you believe and find from the evidence that the defendant made any statement or statements in relation to the offense charged by this information, after said offense is alleged to have been committed, the jury must consider such statement or statements all together. The defendant is entitled to the benefit of what he said for himself, if true, and the State is entitled to the benefit of anything he said against himself in any statement or statements proved by the State. What defendant said against himself the law presumes to be true because said against himself. What the defendant said for himself the jury are not bound to believe because it was said in a statement or statements proved by the State; but the jury may believe or disbelieve it as it is shown to be true or false by the evidence in this cause; it is for the jury to consider under all the circumstances how much of the whole statement or statements of the defendant proved by the State the jury from the evidence in this cause deem worthy of belief."

The only testimony for the State regarding statements made by the appellant was as follows: that after his arrest he admitted his guilt to the justice of the peace before whom he was brought for preliminary hearing, and told the constable he wanted to plead guilty as soon as circuit court convened; and that while confined in the Pemiscot County jail he told another inmate of the jail, Joe Kelley, not to call him Major but to call him Leon; said if Baker, the proprietor of the barber shop, didn't testify against him he would beat the case; and that he would kill the witnesses who appeared against him after he got out. There was no testimony that he made any extrajudicial statements in his own favor.

The appellant in his motion for new trial complains that the giving of the foregoing instruction was error because there was no proof that he had made any statements favorable to himself, in consequence of which the instruction was inapplicable to the facts; and also because the direction to the jury that if they found the defendant

had made any statement or statements relative to the offense charged, they "must consider such statement or statements altogether," amounted to telling the jury they *must* consider the unfavorable statements made by the appellant which was an erroneous encroachment on the province of the jury.

The instruction given in this case is almost identically like one approved in State v. Wilson, 223 Mo. 173, 192, 122 S. W. 671, 676. This court en banc recently had occasion to consider instructions of this character, in State v. Dollarhide, 333 Mo. 1087, 63 S. W. (2d) 998, and State v. Johnson, 333 Mo. 1008, 63 S. W. (2d) 1000. In the latter case on motion for rehearing the question was gone into exhaustively by WESTHUES, C. (333 Mo. l. c. 1013, 63 S. W. (2d) l. c. 1003). The conclusion reached by the court was that when a defendant has made extrajudicial statements some of which were favorable and some unfavorable, it is positive error to give an instruction on the effect of such statements unless it contains an admonition that the jury must consider all such statements together, and that the defendant is entitled to the benefit of what he said for himself, if true.

The instruction in the instant case does incorporate that formula. But the Dollarhide and Johnson cases did not say instructions so drawn are to be approved. On the contrary, the Johnson case, 333 Mo. l. c. 1017, 63 S. W. (2d) l. c. 1005, merely held that form of instruction "is not nearly so objectionable or prejudicial to the defendant" as one omitting the foregoing language. And, speaking of the form of instruction which includes the admonition, the Johnson case goes on to say: "We think it also invades the province of the jury as to what weight they should give to the testimony, and (that it) should not be given. The giving of such an instruction, however, as in the Hayes case, 262 S. W. l. c. 1036, may be harmless error." (Parentheses ours.)

The giving of the instruction in the instant case was not harmless error. The only statements proven by the State to have been made by the appellant were unfavorable to him, and yet the instruction tells the jury they must all be considered together; and further declares that "what the defendant said against himself the law presumes to be true because said against himself." There were no favorable statements in the case to be weighed with the unfavorable statements. Under the facts, the effect of the instruction was to single out the unfavorable statements and tell the jury they must consider them. Furthermore it has been held by this court in numerous cases that an instruction telling the jury what the presumption of law is with regard to a disputed question of fact on which they are required to pass, is error; as in instructions on flight, State v. Moberg, 316 Mo. 647, 291 S. W. 118; on the recent possession of stolen property, State v. Swarens, 294 Mo. 139, 136, 241 S. W. 934, 936; and on

614

the recent possession of a forged instrument, State v. Andrews, 297 Mo. 281, 287, 248 S. W. 967, 969. We think there is no doubt that the giving of such an instruction with reference to statements against interest made by a defendant in a criminal case is as prejudicial and erroneous as it would be in cases of the character just mentioned.

The foregoing covers all the points raised in the appellant's motion for new trial. For the errors pointed out in the giving of the State's Instruction No. 6, on flight, and Instruction No. 3 on extra-judicial statements of the appellant, the judgment is reversed and the cause remanded. All concur.