**STATE of Missouri, Respondent,**

v.

**Carl Otis BRIM, Appellant.**

**No. 48038.**

Supreme Court of Missouri,
Division No. 1.

Nov. 14, 1960.

Lay & Ichord, Houston, for appellant.

John M. Dalton, Atty. Gen., Asst. Atty. Gen., for respondent.

HOLLINGSWORTH, Judge.

Upon trial by jury for the crimes of burglary in the second degree, as defined in § 560.070 RSMo 1949, V.A.M.S.,[1] and stealing in committing said burglary, as that offense is defined in § 560.110, defendant was found guilty of both crimes as jointly charged in the information and his punishment was assessed by the jury at imprisonment in the State Penitentiary for a term of two years for the burglary and like imprisonment of two years for the stealing. He has appealed from the judgment and sentence imposed in accordance with the verdict. Although represented by counsel in the trial court, no brief has been filed in his behalf in this court. We, therefore, review the valid assignments of error set forth in his motion for new trial, as required by S.Ct. Rule 27.20, and the essential portions of the record, as required by S.Ct. Rule 28.02, Vol. 1, V.A.M.R. Among the assignments therein set forth are several challenges to the sufficiency of the evidence to support the verdict.

On and prior to June 27, 1959, Jesse George operated a dry goods store, owned by himself and his wife, in Summersville, Texas County. The building in which the store was located was owned by a Mrs. McDaniel. It was situate on the southeast corner of the "square", facing north. There are two doors into the building, to wit: the front entrance door on the north and the rear door on the south end of the building. The rear door was of wood construction, with a large glass panel in the upper half. The street along the east side of the square extended south along the east side of the store and thence on south to and beyond a church.

On the date here involved, Saturday, June 27, a street carnival was in progress on the square, which offered various attractions for the entertainment of the general public. About 6:30 that evening, as was his custom, Mr. George closed his

---

1. All statutory references are made to said revision.

store, locked the rear door by shoving a bolt catch affixed thereon through an eye or slot attached to the door frame, and left through the front door, which locked automatically by means of a Yale night latch. On Monday morning, June 29, he returned to the store, unlocked the front door and, upon entry into the store, discovered the back door standing open, with the glass panel broken out, some of which had fallen inside the building and some of which had fallen outside. It was apparent that a screw driver had been inserted under the glass panel to pry the glass loose from the door frame and that some of the wood had been torn from the frame. A search of the premises showed that a considerable amount of merchandise, consisting principally of men's and women's apparel, some $5 to $15 in money, and other "stuff", all of an estimated value of about $630, had been stolen from the store.

Further evidence adduced in behalf of the State, consisting primarily of the testimony of James Ray Ashmore and William John Stringer, admittedly accomplices in the commission of the offenses for which defendant was on trial, tended to show as follows:

On the Saturday of the burglary and stealing, Ashmore, then 14 years of age and residing in the City of St. Louis, was visiting in Texas County. On that day he and the defendant, aged 33, who also at that time was a resident of St. Louis, met at Hartshorn, a town near Summersville. Defendant had at one time been married to Ashmore's mother but was then divorced from her. Ashmore rode with defendant in defendant's car, a 1950 model, two-door Ford, to Summersville, where Ashmore attended the carnival and met his friend, Stringer, aged 19, who had been reared in or near Hartshorn. Later that evening, Ashmore and Stringer came upon and talked with defendant at a tavern in Summersville. The three thereafter rode around together in defendant's car, eventually stopping at the side of Jesse George's store. At that time and place defendant

said to Ashmore and Stringer that he "knew where we could pick up some easy money if we needed it"; following which statement, they talked about breaking into George's store. Either at that time, or after driving around for awhile in defendant's car and returning to the store, they got out of the car. Defendant and Stringer went to the rear of the store and Ashmore stood between the car and the store. It was then nighttime and the carnival continued in progress. Stringer came back to the car, got a screw driver from it and returned to the rear of the store and gave it to defendant, who used it to remove the glass panel from the door, which they then opened. When the glass was so removed, it fell and broke. Ashmore at that time saw some persons sitting in a car across the street and signaled (whistled) to defendant and Stringer to "stop whatever they were doing" and return to the car. The three got into defendant's car and returned to the carnival. There, they picked up Lee Derryberry and Hayden Lewis and drove to Hartshorn, where, apparently, Derryberry and Lewis were let out of the car. Considerably later that evening, the three (defendant, Ashmore and Stringer) again rode in defendant's car to the George store and thence "down the road a piece to a church house [one block south of the store] and parked behind it." After parking, they walked to the rear of the George store. Ashmore opened the screen door and went inside. Defendant carried goods from the inside to the outside of the store and directed Ashmore and Stringer to carry them to the car, parked behind the church, which they did. Ultimately, the car was moved back to the side of the store and filled with more of the merchandise stolen from the store. The three then left in the car loaded with the stolen merchandise. They spent the night in the car and the next morning, Sunday, continued on to defendant's apartment on Westminster in the City of St. Louis, where the stolen merchandise was removed from the car and

stored in defendant's apartment. To throw off suspicion, the three returned to Hartshorn in defendant's car that day. Two girls, Barbara Perkins and Ruby Lewis, rode back to Hartshorn with them. Defendant promised Ashmore and Stringer one-third each of what he would realize from the sale of the stolen merchandise, which he estimated would amount to about $70 to $100 for each of them. However, defendant later told them that the merchandise was stolen from his apartment.

The evidence in behalf of defendant, consisting of his testimony which was supported in some of its aspects by the testimony of several of his friends and acquaintances, was that defendant did not participate in any way or manner in the burglary of the George store or the stealing of anything therefrom. He admitted, however, that he took Ashmore to the carnival about 8 p. m. that night; that he saw Stringer at the carnival and that at about 11 or 12 o'clock that night, as the carnival was closing, he and Ashmore and Stringer and two other men (Derryberry and Lewis) left the carnival and went in defendant's car to Hartshorn.

In rebuttal, the State adduced testimony of Johnny Howell, aged 15, that about 8 p. m. on the Saturday night involved, he and Howard Edgmond saw defendant, Ashmore and Stringer talking together between "the tavern and barbershop"; that about 10:30 p. m. he saw them "right at the corner of Jess George's store," at which time the witness heard defendant say something to Ashmore and Stringer about "wanting to get ahold of some easy money"; and that defendant, Ashmore and Stringer then left in "a '50 Ford, white, two-door." Howard Edgmond, aged 17, testified he saw the aforesaid three together at the tavern at about 8 p. m. and later "pretty close to Jess George's store," on the east side of it, and that he "heard them say that they wanted to get some easy money," but he could not remember which one made the remark. The three then went toward the car on the east side of George's store.

Such other evidence and trial incidents as are material to discussion and consideration of the assignments of error set forth in the motion for new trial will be hereinafter set forth.

■ The motion for new trial asserts the judgment herein cannot stand for the reason that the information charges defendant with burglary of and stealing from "a certain store building of Jesse George, Summersville, Missouri," while the evidence shows that no store building "belonging to Jesse George" was broken into but, on the contrary, the evidence showed the store building broken into belonged to a Mrs. McDaniel. As stated, the information did describe the building allegedly burglarized as "a certain store building of Jesse George, Summersville, Missouri." But unquestionably, the building was occupied by Jesse George in the operation of the dry goods store and it was commonly known and was referred to by all of the witnesses, including the defendant, as "Jesse George's store." It is frequently held that proof of "ownership" of a building burglarized does not refer to title but rather to the occupancy. State v. Carey, 318 Mo. 813, 1 S.W.2d 143, 146; State v. Duncan, 336 Mo. 600, 80 S.W.2d 147, 151. In the instant case, proof of the burglary of the building occupied by Jesse George's store constituted proof of the burglary of "a certain store building of Jesse George, Summersville, Missouri," as charged in the information. State v. Carey, supra, 1 S.W. 2d loc. cit. 146; State v. Peterson, Mo., 305 S.W.2d 695, 697–698.

■ Error is assigned in the overruling of defendant's application for continuance filed on October 30, 1959, after the case was called for trial and defendant had waived formal arraignment and pleaded not guilty. It alleged (1) the absence of Lee Derryberry, for whom a subpoena had been issued on October 14, and who, allegedly,

would, if present at the trial, testify that he and defendant were together during the evening of the alleged burglary and that defendant did not enter or take property from the Jesse George store during the evening; and (2) the absence of Ruby Lewis, for whom a subpoena had been issued on October 14, and who, the application alleged, rode to St. Louis with defendant on the morning of June 28, and stated that if the said Ruby Lewis were present as a witness she would testify that defendant did not and could not have transported the goods allegedly stolen from the store to the City of St. Louis. A long colloquy between the court and counsel followed, during which it developed that *one* Lee Derryberry had been subpoenaed, but defendant contended he was the wrong Lee Derryberry. During the colloquy no mention whatever was made as to the witness, Ruby Lewis. Finally, the following occurred:

"Mr. Gladden: I'll admit that he'll (Derryberry) testify to that in case he doesn't get here. They're out looking for him, I understand.

"Now of course, there's another witness (Ruby Lewis) in there. I couldn't admit what the allegations are in there.

"The Court: Well, make your statement, or state it in the record there.

"Mr. Gladden: The State will admit that the defendant—that the witness, Lee Derryberry, would testify to the facts as stated in the application for continuance, provided that the witness does not appear before the defendant rests his case; further provide that we—the State will not admit that the testimony is true, but that he would testify to such facts as stated.

"The Court: Now, the application will be overruled on those conditions.

"Mr. Lay: We accept."

The assignment complains only of the overruling of the application *as to Ruby*

Lewis, stating that "when it appeared that Defendant's most important and necessary witness, Ruby Lewis, could not be found at her usual place of abode and thus the subpoena duly issued was not served upon her and she was not present to testify for Defendant at the trial, particularly did the Court err in refusing to grant the continuance when the Defendant was convicted on the uncorroborated evidence of accomplices alone."

We think it clear that the foregoing assignment is an afterthought. The portion of the record above set forth amounts to an express consent by counsel for defendant that the application for continuance—not merely a portion of it—be overruled on the condition set forth in the statement made to the court by the prosecuting attorney. The trial court is not to be convicted of error in the light of the record above shown. We may add, however, that an examination of the application shows no such diligence on the part of defendant as would convict the trial court of error in overruling it.

Error is assigned in the overruling of defendant's motion for judgment of acquittal filed at the close of all of the evidence. The contention is that: (1) there was no evidence that the store was burglarized as alleged in the information; (2) there was no competent evidence that defendant broke and entered into any store and feloniously took and carried away any property therein; (3) it was not proved beyond a reasonable doubt that any store was broken and entered into and property therein feloniously taken and carried away by defendant; (4) defendant cannot be convicted upon the testimony of the two accomplices without corroboration; and (5) the uncorroborated testimony of two accomplices, neither of whom was charged with the offense, was "insufficient reliable evidence."

■ The evidence adduced in behalf of the State, on the face of the record, shows that (1) the store of Jesse George was

burglarized, and property was stolen therefrom, as alleged in the information, and (2) that defendant was an actively participating principal in the commission of both of said crimes. The verdict of the jury establishes beyond question that the jury believed that evidence to be true. Therefore, the sole question for review under the foregoing assignment is whether the portion of that evidence connecting defendant with the burglary of and stealing from said building, and which was developed by the testimony of two admitted accomplices, was sufficient in law to support the verdict returned by the jury. The law in Missouri is that a conviction may be sustained upon the uncorroborated testimony of an accomplice in the crime charged, State v. Emrich, Mo., 250 S.W.2d 718, 725; State v. Rutledge, Mo., 267 S.W.2d 625, 626, unless that testimony is for some reason so lacking in probative force as not to amount to substantial evidence. State v. Harris, Mo., 295 S.W.2d 94, 95.

Our review of the evidence adduced in behalf of the State, when considered in the light of all the evidence in the case, shows it to be neither incredible nor materially contradictory. Indeed, many facts and circumstances shown by the evidence, including defendant's admitted presence near the scene of the burglary at the time of its commission and his association with Ashmore and Stringer, reasonably may have been considered by the jury as corroborative of their testimony. "This court passes upon the credibility of testimony in criminal cases only insofar as it is necessary to determine whether or not the testimony constitutes evidence sufficient to permit reasonable minds to believe the defendant guilty beyond a reasonable doubt, reserving the power to grant relief only when the denial of it would shock the sense of justice." State v. Nash, Mo., 272 S.W.2d 179, 183. We deem and hold the evidence favorable to the State in the instant case to be substantial and, therefore, sufficient to support the jury's finding of defendant's guilt beyond a reasonable doubt.

Error is assigned in the giving of Instruction S–1 on grounds that "the information charged the offense of burglary under Section 560.070 and the offense of stealing under Section 560.156 while the instruction did not cover the offense of stealing under Section 560.156 but the offense of stealing committed while committing a burglary." In this same connection, error is assigned in the giving of Instruction S–2 on grounds that "both instructions do not submit the offense of stealing alone but require a finding of burglary, or of both burglary and stealing while committing burglary." Careful search of the record shows no objection whatever made to the giving of these or any other of the instructions given by the court. Consequently, the matter is not before us for review. State v. Green, Mo., 305 S.W.2d 863, 871; State v. Richardson, Mo., 315 S.W.2d 139, 141. It may be stated, however, that if either of the instructions contain error, it is definitely favorable to defendant, of which, of course, he may not validly complain. State v. Garrett, Mo., 282 S.W.2d 441, 443. Moreover, Instruction S–2–G expressly tells the jury "that while the offense of burglary and that of stealing in connection with such burglary are charged in the same information, yet they are each separate and distinct offenses, and the jury are at liberty to acquit as to stealing committed in committing burglary, if you so find from the evidence, and find defendant guilty of burglary, or find defendant guilty of both or acquit of both, as you may find and believe from all the facts and circumstances in proof; but to find the defendant guilty of either offense, the jury must so find, from all the facts and circumstances in proof, beyond a reasonable doubt."

The information duly charges defendant with the crimes of which he was convicted. He was personally present and represented by counsel throughout all stages of the trial and after-trial proceedings. The verdict is in due form and the punishment is within the limits fixed by law. Allocution was granted and the judgment and sentence

imposed is in accord with the verdict and constitutes a valid and binding judgment.

The judgment is affirmed.

All concur.