Everett Joe STANFIELD, Appellant,

v.

STATE of Missouri, Respondent.

No. 54028.

Supreme Court of Missouri,
Division No. 1.

June 9, 1969.

Motion for Rehearing to Transfer to Court
En Banc Denied July 14, 1969.

Ike Skelton, Jr., H. Townsend Hader, Lexington, for appellant.

John C. Danforth, Atty. Gen., Richard C. Ashby, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Commissioner.

Appeal from denial of relief on combined motions to withdraw guilty plea and to vacate judgment and sentence. Criminal Rules 27.25 and 27.26, V.A.M.R.

On September 8, 1965, appellant pleaded guilty to an information charging three prior felony convictions and burglary, second degree, and stealing. He was sentenced by The Honorable William M. Kimberlin to 7-years' imprisonment for burglary and 3-years' imprisonment for stealing, the sentences to run consecutively. He is confined in the Missouri state penitentiary.

Appellant charges the information to which he pleaded guilty was insufficient on the ground the allegation of ownership was insufficient. The information, with respect to this contention, charged: "* * * That the said Everett Joe Stanfield, in the County of Cass and State of Missouri, did on the 1st day of June, 1965,

feloniously and burglariously, forcibly break and enter a certain store, shop or building, located on Highway 71 South, Harrisonville, Missouri, the property of Nyman's Food Center, with the felonious and burglarious intent to steal, etc., * * *; and that Everett Joe Stanfield did then and there feloniously and burglariously steal, take and carry away meat having a value of over Fifty Dollars ($50.-00), the property of Nyman's Food Center, with the intent to deprive the owner, etc., * * *."

▆▆ The words "the property of Nyman's Food Center" are words of ownership and they, together with the alleged location "on Highway 71 South, Harrisonville," are sufficient to allege the occupancy or possession of the burglarized structure, State v. Peterson, Mo., 305 S.W.2d 695, 698[5, 6], State v. Jeffords, Mo., 64 S.W.2d 241, 242[4, 5], State v. Stuver, Mo., 360 S.W.2d 89, 91, and to protect appellant from a second prosecution for the same offense, State v. Carey, 318 Mo. 813, 1 S.W.2d 143, 146[12]. It is not required that legal status of the alleged owner of the burglarized structure, whether corporation, partnership, or individual, be averred. State v. Zammar, Mo., 305 S.W.2d 441, 442[1].

Appellant would support his contention with State v. Ford, Mo., 403 S.W.2d 611; however, that defective information is distinguishable from the charge against Everett Joe Stanfield. Ford was prosecuted on information charging only that he did " 'break and enter into the Crossroads Cafe, a building or enclosure in which are kept goods * * *,' " an information which contained identity of the burglarized building but omitted entirely any allegation of ownership. State v. Ford, supra, l. c. 612.

▆ Appellant complains of inadequate representation by counsel at the time of his plea of guilty. His evidence on this ground for relief was his own testimony that his attorney talked with him only one time in the courtroom on the day he was sentenced. He concedes in his brief, as he must, that "his testimony conflicts with that of attorney Don Whitcraft." The record shows that Mr. James Thompson was appointed as counsel for appellant upon arraignment in circuit court June 10, 1965. On June 21, 1965, defendant was again in circuit court and Mr. Thompson withdrew. The court then appointed Mr. Whitcraft and he appeared and accepted the appointment. Mr. Whitcraft was then a lawyer of over 20-years' experience, part of which was as prosecuting attorney and in defense of criminal cases. He consulted with appellant some dozen times prior to trial, seeing him sometimes at the jail and sometimes in court. At the time of his guilty plea and sentencing, appellant acknowledged that he had conferred at length with Mr. Whitcraft in regard to his defense. He made no complaints of the quality of his representation at any time prior to his sentencing and sought to have the services of Mr. Whitcraft even after going to the penitentiary. These are not circumstances or an instance of any substandard level of performance resulting in the trial becoming a mockery or a farce reviewed in State v. Worley, Mo., 371 S.W.2d 221, 223–224[7]; but, to the contrary, the evidence shows, as found by the court, that appellant was ably represented, and appellant failed in his burden of proof on this charge. Crosswhite v. State, Mo., 426 S.W.2d 67, 70[1].

▆ Appellant charges that his home was illegally searched and that the meat alleged to have been stolen was illegally seized. It appears that officers had been to appellant's residence on two prior occasions with search warrants, looking on one occasion for keys and on the other for tires. Appellant testified the search for meat was not made with his permission but he recognizes, as he must, that "his testimony was contradicted by the officers." Deputy Sheriff John L. Welch, Sheriff William James, Trooper Merle Buesing, and Deputy Sheriff Harold Vaughn went

to appellant's residence June 7, 1965, and obtained the meat which is the subject of the stealing charge. According to Deputy Welch, "We had permission to search the home." He said "the stuff (meat) is out at the house. Go and get it and clear it all up." In the words of Sheriff James, "There wasn't any reason for it (search warrant)." Deputy Vaughn testified that "He told us that he had committed several burglaries and he wanted to tell us about them, and where the stolen stuff was hidden at the time." He said the meat was stored "in two freezers or ice boxes, one in the house and the other on the back porch. * * * He asked me to go get all the stolen stuff." Mr. Stanfield requested that the meat be recovered so no search warrant was necessary or obtained. The conflict in evidence on this issue was resolved against appellant in that the testimony of the officers and evidence that search warrants were obtained where consent had not been given supported a finding that the search for, and seizure of, the meat was made pursuant to the consent of appellant, State v. Virdure, Mo., 371 S.W.2d 196, 200[3, 4], State v. Foster, Mo., 349 S.W.2d 922, 924[4], State v. Edmonds, Mo., 347 S.W.2d 158, 163[12].

■ Appellant contends, however, that he entered his plea under a state of duress, fear, and misapprehension and, for that reason, his was not a voluntary plea of guilty. He testified that he pleaded guilty because he had been told by Mr. Whitcraft, and he feared, that his wife would be jailed and that their child would be taken from them. He also stated he had been struck by Deputy Welch, and he was denied use of a telephone and medical care. The officers testified in denial of any abuse of appellant by way of striking or withholding telephone and medical care. In addition to testimony previously mentioned by Mr. Whitcraft, the attorney also denied any knowledge of threats to the wife or concerning the child and appellant never complained of any threats or abuse. The sole reason for advising a guilty plea

was that appellant said he was guilty and hoped other charges might be dismissed. Finally, the compelling evidence proving the voluntariness of appellant's guilty plea comes from the record made at the time the plea was entered:

"The case was called by the Court, being the case of State of Missouri, vs Everett Joseph Stanfield, No. 29294 in the Circuit Court of Cass County, Missouri and then while the accused stood at the bench the following questions were asked by the Court:

"Q Your name is Everett Joe Stanfield? A Yes sir.

"Q Mr. Stanfield you remember that on June 21st, 1965 you appeared before this court and at that time Mr. Don F. Whitcraft was appointed as your attorney to represent and defend you in this case? A Yes sir.

"Q Since that time you have conferred at length with him in regard to your defense in this case? A Yes sir.

"Q Now then on August 26th the prosecuting attorney filed an amended information in this case; are you familiar with that situation that he did so? A Yes sir.

"Q Have you discussed the facts as you know them relative to this first amended information with your attorney, Mr. Whitcraft? A Yes sir.

"Q At this time I am going to read this first amended information to you.

"(Information read to Defendant.)

"Q You have heard me read this to you, Mr. Stanfield; you understand the nature of this proceeding, do you? A Yes sir.

"Q You are charged under the habitual criminal act, having served two terms in the Missouri State Penitentiary and also one term on a federal charge and you are now charged with both burglary and stealing of Nyman's Food Center, Harrisonville, Missouri, stealing meat of the value

of over $50.00, do you understand that? A Yes sir.

"Q How far did you go in school? A Fourth grade.[1]

"Q Fourth grade? A Yes sir.

"Q Has the range of punishment of this charge of burglary and stealing been explained to you? A Yes sir.

"THE COURT: What is the punishment? MR. GUM: Two to ten years on burglary and two to five years stealing.

"THE COURT: Q You realize you could receive 15 years? A Yes sir.

"Q Now you understand that you are entitled to a trial by jury, if you want one? A Yes sir.

"Q Well, since you tell me that you understand the nature of the charge and you know the acts you committed and you know that you are entitled to a jury trial if you want one and you have told me that you know the range of punishment this charge carries, how do you plead, guilty or not guilty? A Guilty.

"Q Are you pleading guilty voluntarily on your part? A Yes sir.

"Q You haven't been influenced or induced to plead guilty by any officer of the state? A No sir.

"Q You are pleading guilty freely and voluntarily on your part? A Yes sir.

"Q Are you pleading guilty for the sole reason you understand the nature of the charge and you know the acts you committed and in your judgment you are a guilty person? A Yes sir.

"THE COURT: Mr. Whitcraft, do you care to make a statement at this time in regard to this case and on behalf of your client?

"MR. WHITCRAFT: Your Honor, the defendant is married and he has one child

and at the time of the commission of this act I believe he was employed by the City of Harrisonville on the street department, working as a street maintenance man. I would like to recommend to the Court because of his wife and child perhaps a sentence of five years would still give him an opportunity to be rehabilitated and then he could join his wife and child and still be some benefit to society at that time.

"THE COURT: What do you have to say, Mr. Prosecutor?

"MR. GUM: May it please the Court, I have presented the record here of his prior convictions and commitments to the Missouri Penitentiary and also the federal penitentiary and I believe the record reflects everything I could say and I have no recommendation to make.

"THE COURT: All right. Mr. Stanfield, do you have any just cause or legal reason why the Court should not pronounce sentence?

"MR. STANFIELD: No sir.

"THE COURT: Well, the Court feels that in view of your past record and in view of the nature of this crime your rehabilitation does not very much enter into the picture here. In view of your past record I am going to assess your punishment at seven years on the crime of Burglary and three years on the crime of stealing, both sentences to be served consecutively, or a total of ten years. You are hereby sentenced to serve a term of seven years for burglary and three years for stealing, said sentences to run consecutively in the Missouri State Penitentiary and you are placed in the custody of the sheriff for execution of that sentence."

Judge Kimberlin also testified on this issue that there was no doubt in his mind that appellant entered his guilty plea freely and voluntarily and that he knew and understood the charges against him. This record demonstrates graphically compliance

---

[1]. At the hearing on these motions appellant testified he went to school "to the eleventh grade."

with the duty of a trial judge to determine the voluntariness of a guilty plea, and furnishes sufficient evidence to support the court's finding on that issue in this collateral attack. See State v. Roark, Mo., 428 S.W.2d 508, 512[1]; State v. Williams, Mo., 391 S.W.2d 227; State v. Bradford, Mo., 262 S.W.2d 584, 586[4].

Finally, appellant complains of irregularities in connection with his preliminary hearing. The record indicates a waiver of preliminary hearing which appellant denies but, assuming he did not have or waive preliminary hearing, the irregularity, if any, was waived by entry of his voluntary plea of guilty. State v. Keeble, Mo., 399 S.W.2d 118, 120–121[8, 9]; State v. Maloney, Mo., 434 S.W.2d 487, 496[12].

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

SEILER and STORCKMAN, JJ., and HOLMAN, Alt. J., concur.

HENLEY, P. J., not sitting.