## THE STATE v. KING, Appellant.

### Division Two, May 19, 1903.

1. **Alibi:** PROOF: REASONABLE DOUBT. A defendant on trial is not required to make out the defense of alibi beyond a reasonable doubt. If the testimony is of such a character as to raise a reasonable doubt in the mind of the jury as to his presence at the time of the commission of the crime, that is all the law requires.

2. **Jurors:** VOIR DIRE EXAMINATION. A liberal latitude should be given the defendant in the examination of the panel of jurors on their *voir dire.*

3. ———: ———: HEARING WITNESSES AT OTHER TRIAL. A co-indictee had on the previous day been tried and convicted as a party to the same larceny and burglary for which defendant was being tried, and one of the veniremen testified that he had heard his testimony, and two others that they had heard his and that of two officers, but all three were retained as members of the trial jury. *Held,* that they could not be the judge of their own impartiality, and that the court should not have confined defendant on their *voir dire* examination to a simple inquiry of whether or not they had formed from hearing that testimony an opinion of defendant's guilt or innocence, but he had a right to the impressions made on their minds thereby.

4. **Remarks of Prosecuting Attorney:** "EX-CONVICT." It is highly improper for the prosecuting attorney in his argument to the jury to refer to the defendant as "an ex-convict" without any proof upon which to base it.

5. **Burglary and Larceny:** INSUFFICIENCY OF EVIDENCE: CONVICTED CO-INDICTEE. For the support of the verdict finding defendant guilty of larceny and burglary, the State relies largely on the testimony of a co-indictee, who on the day previous to the trial had been convicted, and who at the trial said that the other two co-indictees urged him on the night the crime was committed to go with them and rob the tailoring shop, and when he refused they said they were going anyhow, and four suits of clothes and other things were

stolen, and these were found, not in the possession of defendant, but in that of this witness and the third co-indictee, and the evidence further shows that the witness and defendant had had a difficulty, and certain letters introduced by the State as having been written by defendant to the witness, disclose no acknowledgment of guilt, but an effort to reconcile a man whom he feared was about to do him some injustice in connection with the crime. *Held*, that the witness was unworthy of belief, and the defendant should be discharged.

6. **Convictions:** NECESSARY EVIDENCE. Defendants should not be convicted upon mere suspicions of guilt or even strong probabilities of guilt; to warrant their conviction, the testimony, when the whole is considered, should be clear and convincing, entirely satisfying the minds and consciences of the jury.

Appeal from Jackson Criminal Court.—*Hon. Jno. W. Wofford*, Judge.

REVERSED.

*Phil. D. Clear* for appellant.

(1) The court erred in wholly refusing to permit defendant's counsel to examine the jury on their *voir dire*, touching any opinion any of said jurors had formed or expressed on account of having heard a part or all of the evidence the day before in the case against Burns, about or concerning whether or not a burglary or larceny had been committed, the same being the burglary and larceny for which defendant was then on trial. State v. Mann, 83 Mo. 599; State v. Foley, 144 Mo. 613; State v. McGinnis, 158 Mo. 118; State v. Culler, 82 Mo. 623; State v. Burnside, 37 Mo. 343; State v. Wyatt, 50 Mo. 309; Kelley's Criminal Law and Practice, sec. 352; 2 Hawk. Ch. 43, sec. 29; 17 Am. and Eng. Ency. of Law (2 Ed.), pp. 1139 and 1140; Lavin v. People, 69 Ill. 303; Commonwealth v. Webster, 5 Cush. 297; Trial of Aaron Burr, vol. 1, p. 416; De Jarnette v. Com., 75 Va. 867; State v. People, 4 Park 111. (2) The court erred in permitting fre-

quently, over the timely objection of defendant, the prosecutor to continuously belittle the defendant and his witnesses, and oppress them, thereby prejudicing defendant's case before the jury, by asking defendant and his witnesses unfair, oppressive, impertinent, irrelevant and immaterial questions, in an insulting and slurring manner. State v. Prendible, 165 Mo. 360; State v. Lockett, 168 Mo. 489; State v. Fischer, 124 Mo. 460. (3) The court erred in permitting the prosecutor in closing his address to refer to defendant as "other burglar," without reprimanding him. State v. Prendible, 165 Mo. 360; State v. Fischer, 124 Mo. 460; State v. Jackson, 95 Mo. 654. (4) Fatal error was committed by the prosecutor in his closing address to the jury in charging "the defendant is an ex-convict." State v. Prendible, supra; State v. Fischer, supra; State v. Jackson, supra.

*Edward C. Crow*, Attorney-General, and *C. D. Corum* for the State.

(1) It seems that Burns, one of the defendants charged with the burglary and larceny of Topping's store and goods, was tried the day preceding the trial of defendant, and that some of the jurors had heard the testimony in that case. During the examination of jurors Coleman, Meyers and Haman, upon the *voir dire,* counsel for defendant persisted in asking such jurors if, having heard the testimony in the Burns' case, they had formed any impression or opinion whether a burglary and larceny had been committed; and whether if, after hearing such testimony, they had formed any impression or opinion concerning the facts detailed in Burns's trial. The court ruled that the jurors should not answer this question and observed that it was proper to ask the jurors whether they had formed an opinion from any source as to the guilt or innocence of the defendant, and to inquire

whether the jurors' minds were perfectly impartial between the State and the defendant, and that it was proper to interrogate the jurors whether they could hear the evidence in the case and render a fair and impartial verdict between the State and the defendant. The court also observed that it did not rule that these were the only questions that might be asked; but that they were proper questions. The defendant excepted to this ruling of the court. But we can conceive of no theory on which error in this matter can be predicated. The question propounded by counsel and ruled improper by the court only sought the answer to a conceded fact, namely, whether the jurors were of the opinion that a burglary and larceny had been committed. There was no dispute as to this proposition. The question at issue was whether the defendant was a guilty party, and the only question pertinent was as to whether these jurors, from the testimony they had heard in the other trial, or from any cause, had formed an opinion in reference to defendant's guilt. The court did right in refusing to permit the questions propounded to be answered. Besides, counsel stated that they desired to make no challenge for cause to any of the jurors. (2) The defendant complains in his motion for a new trial that error was committed in permitting the prosecuting attorney to refer to the defendant as an ex-convict. It appears in the record that the prosecutor did pronounce the defendant to be an ex-convict; and that this statement was objected to. The record also shows that the court observed that this statement was improper, and as if to emphasize it, the court repeated, "It is improper." No exception was taken on the ground that this rebuke was not sufficiently severe and this remark is not, therefore, before this court for review. State v. Gartrell, 171 Mo. 489.

FOX, J.—On the 27th day of March, 1902, the prosecuting attorney of Jackson county, Missouri, filed an information in open court, charging the defendant, Charles Golden, and Raymond Burns with the offense of burglary and larceny.

It was alleged that on the 5th day of January, 1902, the defendants broke into and entered a tailoring shop of one Joseph Topping and that they stole four pairs of pants and one coat which were found in said shop, and which were in the custody of the said Topping. The defendants were duly arraigned, and on the application of defendant Burns, a severance was granted and the State elected to first try the defendant Burns. He was tried and convicted. Afterwards, upon a trial had upon an issue joined between the State and this appellant, John B. King, he was found guilty and sentenced to imprisonment in the penitentiary for a term of six years.

After having his motion for new trial overruled, he duly appealed from the judgment of conviction. It is conceded by both the State and defendant, that the body of the crime, the burglary and larceny, was fully established by the evidence.

The State in this case relied chiefly upon the testimony of Burns to support the verdict against this defendant. It must be remembered that Burns, the principal witness for the State, was jointly indicted with the defendant in this case, and was tried the day before this case was tried, and convicted. That part of Burns's testimony which undertakes directly to connect this defendant with the burglary and larceny charged, is as follows:

"Q. When did you see King and Golden next? A. I seen them Sunday evening—Sunday evening about 10:30 or 11 o'clock.

"Q. Where? A. At the Cosy Restaurant.

"Q. Where is that? A. That is between Main —or between Walnut and Grand avenue on Thirteenth street.

"Q. How near is that to the southwest corner of Thirteenth and Main? A. I should judge about a block and a half.

"Q. What did you do there in the restaurant? A. Why, I was in there eating lunch when those two gentlemen came in.

"Q. When King and Golden came in? A. Yes, sir.

"Q. Did you meet them outside afterwards? A. Yes, sir.

"Q. Where did you go? A. We went to the corner of Grand avenue and Thirteenth street and had a couple of drinks there and from there we went to Thirteenth and Main street.

"Q. What corner? A. Why, it is the south— the southwest corner.

"Q. Southwest corner of Thirteenth and Main? A. Yes, sir.

"Q. Is there a saloon there? A. Yes, sir.

"Q. How near is that to Topping's tailoring shop —to 3 West Thirteenth street? A. That would be about four or five doors, I would judge.

"Q. How long did you stay there in that saloon? A. Probably twenty-five or thirty minutes.

"Q. What time did you get out from there? A. Well, I should judge right close about 12 o'clock.

"Q. Well, now, after you came out of the saloon, I will ask you to tell the jury whether this defendant, King, and Golden at that time asked you to go in with them and burglarize this store? A. Why, they spoke about it, yes, sir.

"Q. What did they say? A. Well, they wanted me to go,—wanted to know if I wanted to go into some tailor shop—I didn't know at the time where this tailor shop was at—they wanted to know if I wanted

to go in and get some clothes, and I told them no, I did not; we had a few words about it and I told them I wouldn't have nothing to do with it, and they said they was going anyway.

"Q. Who said? A. King and Golden.

"Q. Now say what each one said—did they both say it or just one? A. If I remember right, they both said it.

"Q. Where did you leave them? A. I left them on the corner of Thirteenth and Main street.

"Q. What time of night? A. I should judge it was a little after twelve o'clock.

"Q. What did King say, if anything, when you left? A. He says, 'Burns will talk around about it, about doing anything, and when you come to do it he won't do it,' and I told him I wouldn't have anything to do with it.

"Q. Were there any skeleton keys or burglar tools there? A. Why, I am not positive, I think this man Golden said he had a key he could open the door with."

Robert E. Phelan, who was connected with the police department, was introduced by the State. He arrested all three of the defendants, who were jointly indicted. They were at different places when they were arrested. Phelan further stated that, when he arrested King, King stated he did not know anything about the burglary, and the record discloses that he, at all times, denied having any connection with it. This police officer says he found the goods stolen at the time of the burglary in the possession of Burns and Golden. He does afterwards say that this defendant was in possession of the goods, but this statement is explained, which clearly indicates that defendant was not in the possession of the stolen goods. The record further discloses that all of these defendants, Golden, Burns and King, after they were arrested, had a preliminary hearing. At this exam-

ination it further appears that defendants Golden and Burns did not testify; but that King did testify as a witness. It is also disclosed that Burns and King had a difficulty, or a fight; it is insinuated that this resulted from King's refusal to testify in Burns's behalf; however, it does not clearly appear as to what occasioned the fight between King and Burns; but it does appear from Burns's own statement that they had a difficulty.

The following letter was introduced by the State, marked "Exhibit A":

"Dear Friend Ray: Now here is what you want to send to Hadley if you want to do the right thing and be a man with me, for I am certainly going to stick with you Burns as sure as there is a God in heaven—you know I can make $2.50 a day linework right here in K. C. and you know also I can go the other route—R. R. train service anything that good coin is connected with—I'll show you that there is one ☐ man among so many dirty bastards. I been used to rambling with ☐ people all my life and don't no anything else and when I say I will do anything I'll do it if it's in my power or if any one else can do it for I will go together with a Buzz saw one time in a case like that. Now I tell you Ray this is the right way and only way for us both to go by this & escape the big House. You know there's no evidence against me & I can't be convicted so there's no use for us to do time or buck each other for it will ditch us both. Now Ray do this and you know you are doing the square & right thing for a friend & a man that will stick.

"J. B. KING."

There were two other letters introduced, one by the defendant and one by the State, marked "Exhibits C" and "D." These letters were introduced as being explanatory of letter marked "Exhibit A." Witness Burns admits that he sent these letters to the

prosecuting attorney. All of these letters, if written by this defendant, as testified to by Burns, may be susceptible of inferences, indicating that defendant may have had some connection with the offense charged. The most that can be said of them is that they created a suspicion against him. This is substantially the testimony upon which this conviction is based.

On the part of the defendant, he testified in his own behalf. His statements as a witness were consistent and in harmony with what he had stated to the officers when questioned on this subject. Upon the defense of an alibi, interposed by defendant, numerous witnesses were introduced. While this testimony was not so clear and convincing as to establish his absence from the place of the commission of the crime, beyond a reasonable doubt, yet it was a reasonably fair showing, by witnesses who were laboring men and not impeached. He was not required to make out this defense beyond a reasonable doubt; but if the testimony was of such a character as to raise a reasonable doubt in the mind of the jury as to his presence at the time of the commission of the offense, this was all the law required.

Our attention is first directed to the error complained of in the impaneling of the jury to try this cause. It appears from the record that three of the jurors presented for examination on their *voir dire,* Coleman, Myers and Haman, were in the courtroom the day before, when Burns was tried and convicted of the offense charged against this defendant; that they heard a part of the testimony against Burns. That we may fully comprehend this examination, we here quote from the record in respect to this examination:

"Upon the examination of the jurors for qualification, the following questions were asked of juror J. W. Coleman:

"By Mr. Riggs:

"Q. Were you in court yesterday during the trial of Burns? A. I was here a while.

"Q. How many witnesses did you hear testify? A. I heard part of Burn's talk.

"Q. Part of Burns's talk? A. Yes, sir.

"Q. Did you consider it only talk or testimony?

"By the Court: O, don't mind about that.

"A. Well, you can have it talk or testimony either one.

"Q. Well, from what you heard did you form any impression or opinion whether a burglary had been committed or not?

"By Mr. Hadley: I object to that, your honor.

"By the Court: I don't think that is the question; the question is, did you form any opinion from what you heard as to the guilt or innocence of John B. King? A. No, sir.

"To this ruling of the court the defendant then and there duly excepted and still excepts.

"By the Court: Is your mind perfectly impartial between the State and the defendant? A. Yes, sir.

"Q. Did you form any impression or opinion whether any larceny had been committed or not?

"Objection by the State sustained, to which ruling of the court the defendant then and there duly excepted and still excepts.

"By Mr. Riggs: I understand that that same question ought not to be put to any other jurors?

"By the Court: I hold it is improper to ask whether they have formed an opinion as to whether larceny was committed or not, or whether burglary was committed or not; you can ask them the question as to whether they have formed an opinion from any source at all as to the guilt or innocence of John B. King, and if their minds are perfectly impartial between the State and John B. King, and if they can hear the evidence and render a fair and impartial

verdict between the State and the defendant, but I don't hold you to those questions I have asked at all, but I say they are proper questions to ask.

"To this ruling of the court the defendant then and there duly excepted and still excepts.

"In the examination of juror J. B. Myers, the following questions were asked and rulings made:

"Q. Were you in the court yesterday during the trial of Burns? A. Part of the time.

"Q. You heard part of it? A. Yes, sir.

"Q. Which witnesses were testifying? A. Why, there was three of them, two officers and the defendant.

"Q. Now, from the testimony given by the officers and the testimony given by the defendant on the trial of Burns, did you form any impression or opinion concerning the facts which these officers and Burns testified to?

"By the Court: You needn't answer that question.

"To this ruling of the court the defendant then and there duly excepted and still excepts.

"In the examination of juror J. B. Haman, the following questions were asked and rulings made:

"Q. Were you in court yesterday during the trial of Burns? A. Yes, sir.

"Q. How many witnesses did you hear testify? A. Heard the two officers and part of Burns's testimony.

"Q. And you heard what they testified to? A. Yes, sir.

"Q. From so much of the testimony as you heard did you form any impression or opinion concerning the facts which they testified to?

"By the Court: You needn't answer that question.

"To this ruling of the court the defendant then and there duly excepted and still excepts."

It will be observed that these jurors were present, at least part of the time, the day before in the trial of defendant Burns, for the same offense this defendant was being tried. They heard part of the testimony.

Defendant had the unquestioned right to have a panel of impartial and qualified jurors from which to make his challenges. The testimony in the case of Burns involved material questions in the trial of this defendant. The identical burglary and larceny was being inquired about, and in addition, the identity. of the stolen property was a subject of inquiry, all of which were involved in this case. Conceding for the purposes of this case that the answers to the questions propounded 'would not have furnished sufficient grounds for a challenge for cause, nevertheless, to enable him to intelligently determine his peremptory challenges, defendant clearly had the right to ascertain, by appropriate questions, the influence the hearing of the testimony in the Burns case had upon the minds of the panel of jurors from which he was to make his challenges. In the case of State v. Mann, 83 Mo. 589, this subject is very ably and fully discussed and after a very exhaustive review of all the cases, the court announced the very just and appropriate rule which should be adopted under our' statute, that "a liberal latitude should be allowed in .the examination of the panel of jurors on their *voir dire*."

In the case of State v. Foley, 144 Mo. 600, the court discusses fully the question of competency of jurors. The juror, in that case, stated upon his examination that he could give the defendant a fair trial; but he further stated that he was present at the first trial of the defendant and had formed an opinion. The court very properly held that the juror could not be the judge of his own disinterestedness

and that it was error in the trial court to accept him as one of the panel. It may be true, that the mere fact of hearing a part of testimony in the Burns case, would not disqualify the jurors; but we think it was very pertinent for defendant's counsel to propound the questions as heretofore quoted with the view of ascertaining, first, as to their competency; secondly, it was a legitimate inquiry for the purpose of intelligently determining his challenges. The fact that a burglary and larceny had been committed, the identity of the stolen property, were as material in the trial of this defendant as they were in the trial of Burns, and the defendant had the right to ascertain the impressions of the jurors from hearing this testimony, and it was error to refuse an examination on the part of the defendant on that subject.

It is next insisted that error was committed by the trial court in not rebuking the prosecuting attorney, on account of improper remarks made in his closing address to the jury.

The remarks of the prosecuting officer, and the exceptions and remarks of the court, are disclosed by the record as follows:

"We except to the remark of the prosecutor that Burns testified that he, the defendant and the other man named in the indictment, had concocted the scheme in the restaurant of robbing Topping's place.

"I want to object to the remark of the prosecuting attorney that 'the defendant is an ex-convict.'

"By the Court: That's improper—it is improper.

"I desire to except to the remark of the prosecuting attorney in referring to the defendant as 'other burglars.'"

There was, on the part of the State, an extremely earnest effort to show that the defendant had been a convict in the penitentiary of Illinois. We have

carefully examined the efforts of the State in this respect, and we take it that it must be conceded that there was no competent proof establishing that fact. It was highly improper, on the part of the prosecuting officer, after failing to prove this fact, to refer to the defendant as an ex-convict, without any proof upon which to base it. Representatives of the State, in their efforts to preserve the dignity of the commonwealth, should be commended for their zeal and earnestness, but on the other hand, they must not be so blinded by their desire for conviction as to lose sight of the rights of the defendant.

The defendant is entitled to a fair and impartial trial, and this reference to him before the jury was unwarranted by the proof, and should have been condemned in language by the court sufficiently strong to have destroyed any injurious effect it may have had in this trial.

It may be that the character of the criminal classes in the large cities, with which prosecuting officers are required to deal, is a sufficient apology for the tendency of this record, disclosing as it does an effort to convict—right or wrong—but it must not be forgotten that the rules of law and proper criminal procedure are applicable alike to all subdivisions of the State.

This brings us to the last and most important question in this case: is the testimony in this cause sumcient to support the verdict?

The Attorney-General, in his statement preceding the points and authorities, says, "It seems to us that the case was fairly tried; but we feel it incumbent upon us to say that the evidence to sustain this verdict is not entirely satisfactory to our minds, and we wish to invite a careful consideration of the testimony by this court."

This, supported by the doubtful expressions of the learned trial judge, when the demurrer was offered to the evidence at the close of the State's case, where he

says, "I believe I will let it go to the jury," particularly invites our attention to the testimony upon which this defendant was convicted.

For the support of the verdict in this case we must look chiefly to the testimony of Burns. We must absolutely believe what he says is true and then, in addition, must indulge in the presumption that defendants King and Golden went and committed this burglary and larceny. Burns says about 12 o'clock at night, he, Golden and King were together near the place of the burglary. Golden and King wanted him to go with them. He would have nothing to do with it and "they said they were going anyway."

It will be observed that he swears that he had nothing to do with this burglary, yet he and Golden were found in the possession of the stolen goods and the day before this case was tried, twelve jurors flatly contradicted this statement, for they found him guilty of the burglary as charged.

The State occupies rather a novel position as to this witness Burns. He is introduced by the State as its chief witness, and ordinarily a party introducing a witness vouches for his truth and veracity, yet the State is compelled to admit that the portion of Burns's testimony that he had nothing to do with this burglary, is absolutely false. This is the only position to be taken, for, doubtless, the day before, the prosecuting attorney insisted that he was present and did participate in the burglary. We are then confronted with this position—Burns's testimony is all false, except that part which connects this defendant with this offense, and that testimony the State contends is absolutely true. Viewing all the testimony in this case, that Burns and Golden were found in possession of the stolen goods, that a jury convicted the defendant Burns, that no part of the stolen property was found in the possession of this defendant, we are of the opinion that Burns's testimony is unworthy of belief. As

to the letters, which Burns says this defendant wrote and requested them sent to the prosecuting attorney, while inferences may be drawn from them unfavorable to defendant, yet they contain no admissions of guilt and, furthermore, it must be noted that the testimony discloses that Burns and this defendant had a difficulty, and these letters, if written by this defendant, are but an effort to reconcile a man with whom he had a difficulty, and whom he feared would do him some injustice. However, you can give them their worst construction, and they create but mere suspicions of guilt on the part of this defendant.

Viewing all the testimony in this cause, it is apparent that it is not that clear and convincing proof of the guilt of the defendant as authorizes his conviction. Its tendency, at most, is only calculated to create a suspicion that he was implicated in the commission of the offense.

Defendants should not be convicted upon mere suspicions of guilt or even strong probabilities of guilt; to warrant their conviction, the testimony, when all considered, should be clear and convincing, entirely satisfying the minds and conscience of the jury.

This defendant may be guilty; if so, the testimony fails to show it satisfactorily, and if he is, it is better that he escape than to make a precedent that must be general in its application to the guilty and innocent alike.

Entertaining the views as herein expressed, the judgment will be reversed and the defendant discharged. All concur.