THE STATE v. ISADORE LONDE, Appellant.—132 S. W. (2d) 501.

Division Two, Ocober 31, 1939.

*William J. Hough* and *Sigmund M. Bass* for appellant.

*Roy McKittrick,* Attorney General, and *Robert L. Hyder* for respondent.

BOHLING, C.—Isadore Londe was charged, tried and convicted of the offense of bombing in the City of St. Louis. [Sec. 4424, R. S. 1929, Mo. Stat. Ann., p. 3043.] He was sentenced to twenty-five years' imprisonment. He appealed.

I. Error is predicated on the refusal of a change of venue.

a. Appellant's petition, sworn to, for a change of venue from the Circuit Court of the City of St. Louis alleges that "he cannot have a fair and impartial trial" in the City of St. Louis or in the Eighth Judicial Circuit "because the inhabitants of the entire City of St. Louis" and said circuit "are so prejudiced against him, the defendant, that a fair and impartial trial cannot be had by him in said City" or said judicial circuit. The two supporting affidavits add nothing to the allegations in the petition. The State contends said petition and supporting affidavits state conclusions, not facts, and are insufficient. Consult: Section 3630, R. S. 1929, Mo. Stat. Ann., p. 3194; Sec. 2130, R. S. 1929, Mo. Stat. Ann., p. 2683; State v. Hancock, 320 Mo. 254, 256(II), 7 S. W. (2d) 275, 277[4, 5]; State v. London (Mo.), 84 S. W. (2d) 915, 917[6]. Broadly: "Pleadings are distinguishable from affidavits in that affidavits must state facts under oath, whereas pleadings may contain allegations of conclusions of fact, and verification of the pleading may not be necessary." [2 C. J. S., p. 924, sec. 1 (2d).]

b. On the merits: A short time prior to the trial a negro by the name of Lee L. Baker, a witness for the State, was assaulted in St. Louis County and shot twice. The newspapers of the City of St. Louis published articles covering the occurrence and articles referring to appellant well calculated to arouse public sentiment against appellant. Appellant's brief relies upon Meyers v. Cadwalader, 49 Fed. 32, 36; United States v. Ogden, 105 Fed. 371, 373, and United States v. Montgomery, 42 Fed. (2d) 254, 256, cases wherein publications, accessible to the jurors, during the progress of a trial were considered of such a nature as to have an influence upon the jury. They are not this case. Our holdings, mentioned infra, disclose the wide discretion vested in certain trial courts over this factual issue. We shall not detail the testimony. Appellant offered approximately nine witnesses on the issue. Practically all of the discussions referred to by the witnesses occurred subsequent to the assault upon witness Baker. Of the nine witnesses called by appellant, one had never heard the case discussed; another, a reporter for one of the papers, although he had heard it discussed, had formed no opinion; another, a reporter assigned to investigate the Baker assault, had heard the case discussed around Sikeston, Missouri,

around St. Louis County, and also in the City of St. Louis. He estimated he had talked with as many as fifty people, and half of them thought appellant was guilty, but on cross-examination it was ascertained he had talked to about twelve people in the city of St. Louis and possibly four or five of them had stated they believed appellant guilty. He stated he had formed no opinion. Three or four witnesses estimated they had talked to between twenty-five and fifty persons who had expressed an opinion of appellant's guilt, and others had talked to only three or four. Among the persons thus established to have discussed the Baker shooting or the instant case were police officers, deputy sheriffs, newspaper reporters who were more or less professionally interested, and colored people. The State called seven witnesses. Their testimony, summed up, was to the effect they had not heard appellant's guilt or innocence discussed; that they had heard it discussed and some persons were of the opinion he was guilty and others that he was innocent; and that they had not formed an opinion as to appellant's guilt or innocence. One stated he did not know what the case was about. St. Louis is a city of over 800,000. The record does not establish that the trial court abused the discretion vested in it and if we give consideration to the *voir dire* examination of the veniremen—the court was liberal in disqualifying for cause a large number of veniremen who stated they had formed an opinion, some being favorable to appellant—we reach the same result. [State v. Barrington (Banc), 198 Mo. 23, 84 (III), 95 S. W. 235, 254(3); State v. Rasco, 239 Mo. 535, 549(I), 144 S. W. 449, 453(I); State v. Hudspeth, 150 Mo. 12, 22(II), 51 S. W. 483, 484(2); State v. Dyer, 139 Mo. 199, 208 (II), 40 S. W. 768, 769(2).]

II. Appellant devotes space to the qualification of individual veniremen.

a. A number had read some or the headlines or a portion of some of the newspaper articles concerning the assault upon witness Baker or articles referring to appellant, and stated they had formed an opinion from their reading. Appellant's broad contention that the court erred in not disqualifying for cause said veniremen merely on account of their impression or opinion finds no support in the existing Missouri law and is ruled against appellant. We have said that a venireman who has formed an impression or opinion, which will require testimony to remove, as to the guilt or innocence of an accused from rumors or newspaper reports, or both, is not disqualified for cause if his *voir dire* examination satisfactorily discloses he can and will render a verdict on the law and the evidence free from prejudice and bias. [Sec. 3671, R. S. 1929, Mo. Stat. Ann., p. 3221; State v. Walton (Banc), 74 Mo. 270, 274-284, reviewing authorities; State v. Core (Banc), 70 Mo. 491, 492(1); State v. Poor, 286 Mo. 644, 655(III), 228 S. W. 810, 814[5], reviewing cases; State v.

Wampler (Mo.), 58 S. W. (2d) 266, 268[4], citing cases; State v. Stanton (Mo.), 68 S. W. (2d) 810, 813[8].]

b. Upon objections interposed, the court refused to permit appellant to inquire of several veniremen who had thus formed an impression or opinion whether or not evidence would be required to remove that impression or opinion, and appellant's brief alleges error therefor on the ground appellant was entitled to make such inquiry preparatory to exercising his peremptory challenges. Appellant cites State v. McKeever, 339 Mo. 1066, 1077[5], 101 S. W. (2d) 22, 27[6]; State v. Goffstein, 342 Mo. 499, 509, 116 S. W. (2d) 65, 70[9], and the Wampler and Stanton cases, supra. The holding in the Wampler and Stanton cases is indicated above. The McKeever and Goffstein cases so far as here involved, contain general observations that, within reasonable limits, a liberal latitude is allowed on the *voir dire* examination for the purpose of challenge for favor. They do not rule the instant issue. We are mindful of State v. Mann (Banc), 83 Mo. 589, 595-599; State v. King, 174 Mo. 647, 655-659, 74 S. W. 627, 629, 630; and State v. Miller (Mo.), 207 S. W. 797, 798[1, 2]; but, on the instant record, rule the issue against the appellant; because:

1. The. *voir dire* examination of said veniremen answered appellant's inquiry. Giving appellant's point its widest scope, it embraces the examination of veniremen Parrish, Orthwein, Adams and Schmidt. Parrish had formed "no opinion" and, of course, the point has no factual foundation with respect to said venireman. Orthwein stated that one reading an article naturally formed some opinion from reading it, but that such opinion as he had would not color his verdict. Orthwein and Schmidt each stated that he presumed appellant to be innocent until proved guilty. Adams and Schmidt severally stated that such opinion as each had was not necessarily a fixed opinion, and each, under questioning of the court, stated he could hear the evidence and the instructions of the court and base his verdict solely upon that evidence and solely upon that law. If so, such opinion as each of said veniremen had was not of a character that required testimony to remove it.

2. The ground assigned for the alleged error in appellant's motion for new trial was that each of said veniremen "should have legally been challenged and disqualified for cause by the court because of his opinion." (This, so far as indicated, appears to have been appellant's theory pending the *voir dire* examination. Consult State v. McCord, 237 Mo. 242, 245(I), 140 S. W. 885, 886[2]; State v. Collins, 292 Mo. 102, 107 (I), 237 S. W. 516, 518[1].) The issue thus presented is not the issue presented in appellant's brief. As pointed out above, the assignment in appellant's motion for new trial is not sustainable. For the reason that the trial court was not called upon to review its action on the issue presented in appellant's brief,

our holdings that issues presented only in appellant's brief (not being covered by appellant's motion for new trial) are not properly preserved for appellate review afford· an additional ground for our conclusion. [Sec. 3735,.R. S. 1929, Mo. Stat. Ann., p. 3275; State v. Rogers (Mo.), 102 S. W. (2d) 566, 568[4]; State v. Williams, 335 Mo. 234, 237[1], 71 S. W. (2d) 732, 733[1]; State v. McGee, 336 Mo. 1082, 1103(XV), 83 S. W. (2d) 98, 111[50]; State v. Barbata, 336 Mo. 362, 375[4], 377[6], 80 S. W. (2d) 865, 873[9, 11].]

3. Other reasons may exist. For instance. If the State peremptorily challenged the questioned veniremen and appellant was not required to exhause any of his peremptory challenges in striking said veniremen from the jury list; was appellant prejudiced by the court's ruling, if error? There is no legal proof in the instant record showing that the State did not peremptorily challenge said veniremen or that appellant was required to exhaust any of his peremptory challenges in removing said veniremen from the trial jury. See remarks in State v. Davis, 237 Mo. 237, 240 (II), 140 S. W. 902, 904[3]; State v. Nevils, 330 Mo. 831, 839 (III), 51 S. W. (2d) 47, 50[3]; Parlon v. Wells, 322 Mo. 1001, 1012, 17 S. W. (2d) 528, 533[3].

The charge against appellant was that, on June 2, 1938, he did ": . . set and cause to be exploded a certain bomb, charged with explosives, the construction and make and contents of which 'said bomb is to these grand jurors unknown, in the entrance to a certain building located at No. 2600 Franklin Avenue, and did then and there and thereby cause a person, to-wit, Otis Gordon to be placed in danger of bodily injury . . ."

To establish this charge, which well might have been differently phrased, the State adduced testimony to the following effect:

The Howard Cleaners, garment cleaners, had a place of business at No. 2600 Franklin Avenue, St. Louis City—that is, at the southwest corner of Franklin and Jefferson Avenues. Twenty-six-hundred and 2602 Franklin Avenue are parts of the same building. The Acme Mutual Insurance Company had leased the second floor, or upstairs, of 2602 Franklin Avenue. Otis Gordon, an employee of said insurance company, was permitted to and, on said June 2nd, occupied the west portion of the front room upstairs as sleeping quarters. Appellant was the owner of a 1937 Buick sedan, black or blue-black in color with white side wall tires and license tag No. 625-643. He kept this automobile at the Donaldson Court garage, 6510 Enright Avenue. About 5:30 A. M. on June 2, 1938, appellant took his automobile from said garage. Lee L. Baker testified that he arrived at the northwest corner of the intersection of Franklin and Jefferson Avenues between 5:30 and 5:45 A. M. on June 2, 1938, on his way to work; that a black sedan with white side wall tires and occupied by two men in light colored suits, drove up and came to a sudden

stop at the southwest corner of said intersection in front of the Howard cleaners; that witness thought the car was occupied by detectives and he stopped; that appellant, who was not driving, got out of the automobile, went to the back, raised the trunk lid, got "something" out of the trunk, walked around to the front of the automobile, stopped and leaned over into the automobile; that witness then saw a little smoke coming up in the automobile; that appellant then threw "it" toward the door of the Howard cleaners, got back into the automobile and the automobile departed, moving rapidly and turning at the next corner; and that about two minutes later the explosion occurred, accompanied by a large volume of black smoke. Police officers Greenspan, Powell, and Wilder were "cruising the city." Greenspan's and Wilder's testimony was that between 5:30 and 5:45 A. M. June 2, 1938, they were in the vicinity of St. Charles and Twentieth Streets; that they saw a 1937 blue-black Buick sedan with white side wall tires and license tag No. 625-643, occupied by two men wearing light colored clothes and straw hats; that shortly thereafter and as the police car approached Franklin Avenue they heard an explosion and arrived at the scene of the explosion about a minute later. When they arrived debris was still falling; dust and glass were scattered inside the building, on both side walks, on the top and running boards of taxicabs parked at the corner, and out in both streets; the door of the Howard cleaners had been "blown in," and glass was in an office directly over the entrance to the Howard cleaners and a glass was out of an upstairs window of a bank building across the street. The tile floor of the Howard cleaners' entrance had a hole in it between ten and twelve inches in diameter; they smelled the odor of black powder. One of the taxi operators testified the noise and shaking of his taxi awakened him. Appellant's automobile was not returned to the Donaldson Court garage until June 22, 1938, on which day he was placed under arrest by the officers who had been endeavoring to locate him in the meantime.

Appellant offered no witness in his behalf.

█ III. Appellant questions the sufficiency of the evidence stating there was no substantial testimony establishing (a) the explosion of a bomb as distinguished from some other device charged with powder or other explosive and (b) the placing of Otis Gordon in danger of bodily injury as distinguished from the possibility that he might have been placed in danger of bodily injury.

a. Appellant insists that to determine what constitutes a "bomb" under the Missouri law we must refer to Laws 1935, page 226, an act making it an offense to have possession, etc., of a "bomb or bombshell" and enacting that said terms ". . . shall be held to mean any device or object containing dynamite or any other explosive or highly combustible substance or chemical connected with a fuse,

dynamite cap or other device or substance whereby such explosive or highly combustible substance or chemical may be ignited or exploded, and capable of causing bodily injury or death to persons, or damage or destruction to property . . ." The evidence established that whatever the device or object was, it exploded and caused damage to property. Said Law of 1935, for its purposes, makes a "bomb" and a "device" and an "object" of the nature there specified identical. There was substantial testimony that appellant set or caused to be exploded a bomb, or a device, or an object containing an explosive connected with a fuse, whereby such explosive was ignited and exploded, etc., within said definition. The point, as presented, is ruled against appellant.

Section 4424, Revised Statutes 1929 (Mo. Stat. Ann., p. 3043), provides that "whoever shall . . . explode . . . or causes to be exploded any bomb or other device charged with powder or other explosive, whereby any person is or may be put in danger of bodily injury . . ., shall be deemed guilty of bombing . . ." The term "bomb" as there employed, is not to be restricted to its military significance; such as missiles thrown by a mortar or dropped from aircraft, or hand or larger grenades. Broader definitions are: "Any similar missile or device; as, a dynamite bomb." [Webster's New International Dictionary, 2nd Ed. See also New Standard Dictionary, 1936 Ed.; Century Dictionary and Cyclopedia, 1911 Ed.] "A hollow box, basket or shell, filled with gunpowder, or other explosive set off by means of a time-fuse or other device . . . . The term is also applied to designate the infernal machines contrived by common criminals to accomplish murder and destruction of property." [The Encyclopedia Americana, 1936 Ed.] "Modern political upheavals have induced a traffic in packages of explosives, which have been christened bombs." [The American Encyclopedia Dictionary, 1895 Ed.] From witness Baker's narrative that appellant leaned over into the automobile and the witness then saw some smoke, it may be inferred that appellant ignited a fuse; and from the officers' testimony that they detected the odor of gunpowder it may be inferred that powder constituted, in part, an ingredient of the explosive substance. Measured by the broader definitions, the testimony, if believed, warranted a finding that the "something" appellant threw had a fuse connected with explosive substances within some sort of container or package.

b. At the time of the explosion Otis Gordon was asleep on the second floor of the building about two feet from the west and six feet from the north wall over what is known as 2602 Franklin Avenue. He testified, speaking of the upstairs, that 2600 and 2602 Franklin Avenue were connected; that there was a partition, a regular plastered wall, with connecting doorways; that the noise awakened him and he heard glass falling but did not get up to investigate; that he tried not to let things excite him, and that he thought there had

been an automobile accident and went back to sleep. Stressing his testimony appellant argues there was no substantial showing that Otis Gordon was put in danger of bodily injury. Only two witnesses undertook to narrate (each briefly) the extent of the damage to the building. The State, however, offered in evidence two photographs (Exhibits G and H) identified by different witnesses as correctly disclosing the appearance of the building—one from the Franklin Avenue and the other from the Jefferson Avenue side—after the . explosion. These photographs were submitted to the triers of facts below but are not preserved in the record presented here. They may have been very instrumental in bringing about the verdict. Without all the evidence on the issue before us, we are in no position to hold the jury did not base its conclusions upon substantial probative evidence. [State v. Shepard, 334 Mo. 423, 427[2], 67 S. W. (2d) 91, 93[3, 4]; State v. Fritterer (Banc), 65 Mo. 422, 423; State v. Ross, 334 Mo. 870, 874, 69 S. W. (2d) 293, 295[9].] Our narrative of the oral testimony discloses a severe explosion doing substantial damage to the building. ''Danger'' is a generic term, including peril, jeopardy, hazard and risk; and as used in the statute refers to exposure or liability to injury. The extent of the destruction to the building, no doubt, was influenced by appellant's haphazard throwing of the bomb and its fortuitous stopping place. A few inches one way or the other may have effected a vast difference in its destruction of the building's structural work. The issue should be determined not from the results alone, but should also embrace the manner, method and means employed.

■ IV. Appellant's motion for new trial complains in separate paragraphs of the refusal of specified instructions offered by appellant alleging, in each instance, as ground therefor: ''. . . for the reason that said instruction advises the jury of material matters of law necessary for the jury's information, and is an instruction pertinent to the issues and facts in the case to which the defendant is entitled under the law and the evidence in the case.'' These assignments merely state the general conclusion that the specified instruction was a proper instruction and that the court erred in refusing it. They do not set forth in detail and with particularity the specified ground for error as required by Section 3735, Revised Statutes 1929 (Mo. Stat. Ann., p. 3275); and the State's position that said assignments do not comply with said section and, therefore, failed to preserve any issue for appellate review is well taken. [State v. Reagan (Mo.), 108 S. W. (2d) 391, 395[6]; State v. Ward, 337 Mo. 425, 434[VII], 85 S. W. (2d) 1, 6[8]; and, by way of analogy, State v. Kelly (Mo.), 107 S. W. (2d) 19, 21[7]; State v. Sinovich, 329 Mo. 909, 915, 916, 46 S. W. (2d) 877, 880[9].]

V. Appellant attacks the closing argument of the State's attorney. He refers us generally to certain Missouri cases without developing their applicability. Some of the cases rule issues not presented by the instant record.

Appellant's complaint that reference to others than Otis Gordon being in the vicinity of the explosion led the jury to believe they might convict if they found that others had been put in danger of bodily injury irrespective of an affirmative finding on the factual issue of danger to Otis Gordon and prejudiced the jury against appellant, is not supported by the record. The court and the State's attorney specifically told the jury that a conviction was to be had only upon a finding that Otis Gordon was put in danger. This, in addition to the explicit directions in the instructions. We quote one instance: "The Court. Gentlemen of the Jury: You will consider, as to the point of endangering the life of someone, the question of the life or injury of one Otis Gordon and not someone else." The testimony established that two taxi operators were in their cabs at the curb, were awakened by the noise of the explosion, the shaking of their cabs and the shattering of glass on the cabs and running boards; and that a woman was proceeding along the sidewalk at or just immediately prior to the time of the explosion. Reference to others being in the vicinity was within the *res gestae*; and cases wherein the prosecutor goes outside the evidence are not controlling. Further, the face of the record discloses that the statements objected to were in direct reply to arguments advanced on behalf of appellant, and we have ruled legitimate argument in reply is not improper. [State v. Reagan (Mo.), 108 S. W. (2d) 391, 397[18, 19]; State v. Smith (Mo.), 300 S. W. 1081, 1083[4]; State v. Lynn (Mo.), 23 S. W. (2d) 139, 141 [1-4].] We take the most specific instance of record. "Mr. Hough asks you to consider Mr. Londe as a human being. Did he consider anybody when he threw that bomb, gentlemen? Did he consider the cleaning company? Leave that aside. Did he consider human beings? Did he consider those colored people in that neighborhood? Did he consider Otis Gordon and the taxicab drivers? Did he consider that woman there?" This was to rebut the argument on behalf of appellant; and a jury of reasonable men would so construe it, especially is this true with the court and the attorneys informing them a finding that Otis Gordon was put in danger was essential to a conviction.

Appellant's remaining complaint attacks a statement made in conclusion: "St. Louis is a good community in which to live and I say to you the eyes of this community, not only of this community, but of the State of Missouri and farther away than that, maybe the whole country, are on you tonight." The Court sustained appellant's objection and directed the jury to disregard the statement but refused to declare a mistrial or reprimand counsel. Speaking to a

similar remark, State v. Dipley, 242 Mo. 461, 480, 147 S. W. 111, 117[22], characterized it as "a mere rhetorical appeal to the jury such as is commonly made in the trial of criminal cases;" and said: "Without passing upon the question as to whether such admonition [that prosecutor stay within the record] was deserved, we have no hesitancy in holding that the remark did not constitute reversible error." We think that ruling applicable here. Consult State v. Strait (Mo.), 279 S. W. 109, 114[16-18]; State v. Coffee, 225 Mo. App. 373, 376, 35 S. W. (2d) 969, 971[12]; State v. Frost (Mo.), 289 S. W. 895, 897[3].]

Appellant's brief does not question the record proper and our review thereof has not disclosed reversible error. This opinion was written and passed out to the Judges and Commissioners several days ago. Appellant has this day filed a motion to affirm the judgment. For the reasons stated in the opinion, and also on said motion, the judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.