STATE of Missouri, Respondent,

v.

Gerald PETERSON, Appellant.

No. 46017.

Supreme Court of Missouri,
Division No. 2.

Oct. 14, 1957.

No attorney, for appellant.

John M. Dalton, Atty. Gen., John C. Baumann, Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

A jury has found the appellant, Gerald Peterson, guilty of second degree burglary. The jury also found that he had been previously convicted, sentenced and discharged of an offense punishable by imprisonment in the penitentiary and, therefore, fixed his punishment at ten years' imprisonment.

The information charged that in 1954 he was "duly convicted of Larceny of an Automobile and in accordance with said conviction, was sentenced to three (3) years in the Missouri State Penitentiary and on the 23rd day of January, 1954, was duly imprisoned therein in accordance with the aforesaid sentence, and on December 17, 1955, was duly discharged under commutation of sentence by Governor Donnelly." As to the present offense it is charged that on February 24, 1956, "Gerald Peterson did then and there feloniously and burglariously break into and enter a certain building used by Rollie Pettijohn, d/b/a Pettijohn Service Station, in which divers goods, wares and merchandise were kept and deposited  *  *  *."

▮ In his brief, the appellant "by Best Friend," first urges that the information does not properly allege or charge his prior conviction, sentence and discharge within the meaning of the second offense statute. V.A.M.S. § 556.280. The particular complaint is of the phrase, "discharged under commutation of sentence by Governor Donnelly," which he says, in effect, does not show, in the language of the statute, that he was "discharged, either upon pardon or upon compliance with the sentence." This and similar objections have often been made to informations charging prior offenses but it has become firmly established that such allegations meet the requirements of the statute. State v. Asher, Mo., 246 S.W. 911; State v. Pitts, Mo., 282 S.W.2d

561. And likewise of his complaints that the exhibits concerning his prior trial, conviction and discharge were not properly authenticated, did not identify the appellant, and were, therefore, not admissible in evidence. These records consisted of a certified copy of a judgment of conviction of larceny of an automobile in Buchanan County in January 1954, and a "Certified Transcript Of Serial Record," certified to by the Deputy Warden of the Missouri State Penitentiary. V.A.M.S. § 216.395. The Chief of Detectives of the St. Joseph Police Department, who had known the appellant for seven or eight years, identified the appellant as the person named in all of the documents. In these circumstances the documents were properly authenticated, he was identified, and they were, of course, admissible in evidence. State v. Dalton, Mo., 23 S.W.2d 1. These exhibits and this record are in nowise comparable to those in State v. St. Clair, Mo., 261 S.W.2d 75. In addition, upon cross-examination the appellant readily admitted the prior conviction and the service of his sentence (State v. Reed, Mo., 298 S.W.2d 426; State v. Scott, Mo., 299 S.W.2d 526) and there was no error in the court's instructing the jury upon the subject of second offense and the instruction was not an improper or unwarranted comment on the evidence (V.A.M.S. § 546.380) and did not infringe the jury's prerogative of trying and finding all issues of fact. V.A.M.S. § 546.040. State v. Dalton, supra; State v. Hands, Mo., 260 S.W.2d 14. Also in this connection the appellant, citing the statute with reference to the prosecution of burglary and larceny in one count (V.A.M.S. § 560.110), contends that the court erroneously instructed the jury as to the punishment to be inflicted but, the jury having found the second offense, the infliction of the ten-year penalty was mandatory. V.A.M.S. §§ 560.070, 560.095, 556.280.

▮▮ Second, the appellant urges that the information is fatally defective as an attempt to charge burglary in the second degree (V.A.M.S. § 560.070) in that it

wholly fails to allege the ownership of the premises charged to have been burglarized. To show that the premises did not belong to the accused and to protect him from a second prosecution for the same offense (State v. Carey, 318 Mo. 813, 820, 1 S.W. 2d 143, 146), the charge of ownership of the burglarized premises is a necessary and essential element in Missouri. Annotation 169 A.L.R. 887. As indicated, the allegation here is that "Gerald Peterson did then and there feloniously and burglariously break into and enter *a certain building used by Rollie Pettijohn, d/b/a Pettijohn Service Station,* in which divers goods, wares and merchandise were kept and deposited * * *." In State v. Schultz, Mo., 295 S.W. 535, 536, the allegation of *"a store building known as House's hardware and dry goods store,* located at 4817 Prospect avenue, Kansas City," was not an allegation of ownership of the building alleged to have been burglarized and, therefore, the indictment was fatally defective. And in State v. Simpson, 317 Mo. 398, 295 S.W. 739, the allegation of "a building located at 217 West Ninth street, in Kansas City, Jackson county, Mo., and known as the Savoy Pharmacy, a more accurate description of which is to the said grand jurors unknown" was held to constitute a failure to allege ownership. However, it is often that the state in its proof or the facts of the offense are not concerned with the legal title to the building and in those instances it is sufficient to allege the occupancy or possession of the premises at the time they were burglarized. And so, in State v. Jeffords, Mo., 64 S.W.2d 241, 242, the allegation was "said store building being used as a store, and operated by Mr. and Mrs. John Sappington." We are not concerned here with a variance in proof of the fact (State v. Carey, supra) or with the right to amend the information in this respect (State v. Wright, 339 Mo. 41, 95 S.W.2d 1159); Mr. Pettijohn testified that his business was that of a service station operator and that he "operated" the burglarized service station. The appellant was well acquainted with the service station, Mr. Pettijohn and his "use" and "operation" of the service station—he was a customer and had a charge account with Mr. Pettijohn on the date he is alleged to have burglarized the premises. In this information the description "a certain building *used* by Rollie Pettijohn, d/b/a Pettijohn Service Station" is a good and sufficient charge of ownership of the building or premises. State v. Jeffords, supra; State v. Carey, supra.

The appellant has briefed several matters which were not set forth in either his motion for a new trial or in his so-called amended motion (State v. Townzell, Mo., 286 S.W.2d 785), and many of his assignments in both his motion and brief are so lacking in detail and particularity as to not be reviewable. V.A.M.S. § 547.030; Supreme Court Rule 27.20, 42 V.A.M.S. For example, the objections that the court erred in admitting incompetent, irrelevant and immaterial evidence offered by the state, that the court erred in giving each and every instruction as against the burden of proof and the weight of the evidence or against the credible evidence, that the verdict was the result of passion and prejudice have repeatedly been held to be so lacking in particularity as to not be reviewable. State v. Reed, supra; State v. Burks, Mo., 257 S.W.2d 919; State v. Fields, Mo., 293 S.W.2d 952. And, of course, it was not prejudicially erroneous for the court to give the "guilty" instructions and forms of verdict before setting forth or giving the "not guilty" instructions and verdict form. State v. Lord, Mo., 286 S.W.2d 737. However, all these and several other objections are concerned with the substantive objection and argument that the evidence was insufficient to establish his guilt. And his contention in this respect stems from the inexcusably bizarre fact that the two crucial witnesses, two deputy sheriffs —one a man with seven years' experience and the other a "rookie"—testified to an almost completely contradictory set of facts and one of them testified for the state and the other for the appellant.

The deputies were on night patrol duty and had checked the Pettijohn Service Station about one o'clock. As they approached the station a second time, about five o'clock in the morning of February 24, 1956, they saw the appellant's automobile parked on the east side of the building. The older deputy testified that his companion was driving the patrol car and that he sat with a powerful spotlight in his lap. There were two sign lights turned on in the station and as the older deputy directed the spotlight on the window of the station he says he saw the broken south window and the appellant, with whom he was acquainted, standing beside the cash register inside the filling station. He says that Peterson ran to the north door and the deputy, thinking that there was another person in the parked automobile, went over to it and took the keys out of the ignition switch. As he did so the appellant ran out the door, north "towards the tanks, down over the bank, and that is the last I seen him." He knew the appellant, described the clothes he wore, and repeatedly and emphatically identified him as the person he saw inside the service station. The other deputy, testifying as a defendant's witness, said that as they approached the service station they saw the car parked behind the station, he saw the broken window, and that the other deputy got out of the patrol car and went to the parked automobile. He was driving and he turned the bright lights of the patrol car on the building but he did not see anyone in or around the station and he did not see anyone running away. He says that the other deputy did not have the spotlight but that he had it and "throwed it around on the cornfield" but saw no one.

The appellant testified that he came from his mother's home at Rea, he was going to a friend's home, and as he approached the Pettijohn Service Station his automobile sputtered and ran out of gasoline and he let it roll down an incline behind the station, intending to get it later in the day. He got his jacket out of the car trunk and started walking toward Krug School to catch a bus.

He says that the patrol car passed him two blocks north of Krug School. As he turned the corner he saw a bus and ran to catch it but the bus pulled away and he missed it. He said that he was standing "there at the Krug School" waiting for another bus and a man came out of the school building "and we exchanged greetings of some kind. I looked up and another bus was coming and I stepped out to the curb to get on the bus and the police car passed the bus, and that is when I was arrested." He had "traded with Pettijohn" twelve or thirteen years and he denied that he broke the window or entered the service station.

The man he saw at the Krug School was Mr. Matthews, the school engineer, whose residence adjoined the school property. Mr. Matthews says that as he walked toward the school building he saw a man running down St. Joe Avenue, he supposed the man was "running for the bus," but the man "ran down to about the middle of the boulevard on St. Joe Avenue, stopped and looked both ways on the boulevard, and instead of coming on down the sidewalk, he veered off and came down into the school yard." Mr. Matthews unlocked and entered the school building and he could see the appellant standing outside. When he went to the boiler room he thought he heard a rattle at the back door and, having left his house unlocked, he became apprehensive about his wife. So he returned home and called the police and as he came back to the building the appellant was leaning against the southeast corner of the building. "I said, Good Morning, Sir, and he said, Good Morning, and said it was rather chilly but he thought the morning was rather pleasant for that time of year, and I said I thought it was a rather warm morning, or a pleasant morning, and I passed on by and went into the building." As he looked out the front window the police were "putting this man in the police car." In addition to identifying the appellant Mr. Matthews also described the clothes he was wearing, particularly the leather jacket.

Returning to the testimony of the deputy sheriffs, it can only be said that there was a conflict in their evidence and in the permissible inferences and the jury and the trial court have considered its credibility. State v. Wilson, 225 Mo. 503, 125 S.W. 479. This is not an instance in which it appears or is demonstrable upon the record that the state's principal witness was so unworthy of belief as to demand the rejection of his testimony and the appellant's acquittal as in State v. King, 174 Mo. 647, 74 S.W. 627. Neither is it a case in which there is no evidence of a burglary or of the appellant's connection with it. State v. Liston, 315 Mo. 1305, 292 S.W. 45. If, as the older deputy sheriff testified, the appellant was in the station, the window having been broken and turned around on its hinges, the jury could find that it was he who broke the glass and thus entered the building. State v. Henderson & Younger, 212 Mo. 208, 110 S.W. 1078, 17 L.R.A.,N.S., 1100; State v. O'Brien, Mo., 249 S.W.2d 433; State v. Whitaker, Mo., 275 S.W.2d 316. If after being discovered he left the building through the north door and ran, the described circumstances could well evince some consciousness of guilt (22 C.J.S. Criminal Law § 625, p. 956) and constitute flight (State v. Silvey, Mo., 296 S.W. 128) and the evidence was admissible against him. State v. Lugar, Mo., 84 S.W.2d 614; State v. Ash, Mo., 286 S.W.2d 808. Another crucial fact issue was whether the appellant's automobile was out of gasoline as he and his mother said and the trial court did not abuse its discretion in permitting the state to recall the older deputy sheriff to testify that the appellant was taken to the garage and started the automobile or to call a garage man who said that "one of the deputies got in and started the motor." 23 C.J.S. Criminal Law §§ 1050, p. 450, 1051, p. 455; State v. Smith, Mo., 261 S.W.2d 50. In short, while the evidence was not entirely satisfactory in every respect it was sufficient to establish and support the finding of the appellant's guilt of burglary in the second degree and there was no prejudicial error in the admission of evidence or in the instructions upon the essential merits of the cause.

There was allocution, a proper sentence and judgment and there was compliance with all matters necessary to be considered by this court "upon the record before it." V.A.M.S. § 547.270; Sup.Ct. Rule 28.02. Since no prejudicial error is found or demonstrated upon the transcript the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.