**STATE of Missouri, Respondent,**

v.

**Gerald PETERSON, Appellant.**

**No. 46017.**

Supreme Court of Missouri,
Division No. 2.

Dec. 16, 1974.

Motion for Rehearing or to Transfer to
Court En Banc Denied Jan. 13, 1975.

**2**

John C. Danforth, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for respondent.

William E. Erdrich, Asst. Public Defender, Fifth Judicial Circuit of Mo., St. Joseph, for appellant.

HOUSER, Commissioner.

On October 14, 1957 this Court on direct appeal affirmed a conviction of Gerald Peterson on a charge of second degree burglary. State v. Peterson, 305 S.W.2d 695 (Mo.1957). At the January Session, 1974 of this Court the judgment of affirmance was set aside under Swenson v. Donnell, 382 F.2d 248 (8th Cir. 1967), because defendant, a legally indigent person, was not represented by counsel on appeal; the cause was reinstated on the docket and counsel was appointed for defendant on appeal and directed to file a brief. Appointed counsel filed a brief on his behalf; appellant filed a supplemental pro se brief, and the cause was argued and submitted at the September, 1974 Term.

■ The first point in counsel's brief is that in the original trial the court erred in admitting evidence concerning appellant's prior conviction without proper foundation or authentication, to his prejudice. The merits of this self-same question were raised, fully explored and decided adversely to appellant on the original appeal.

State v. Peterson, supra, 305 S.W.2d l.c. 697 [2, 3]. Satisfied with the analysis, consideration and decision of this point in the opinion handed down October 14, 1957 we adopt the same *in haec verba* by reference, and therefore decide Point I against appellant.

Counsel's second point: "The court erred in permitting the State to put on additional evidence after the close of all the evidence, all to the prejudice of the appellant." Defendant's automobile, a two-tone Mercury, was discovered parked at the filling station where the night-time burglary took place. According to the officers defendant fled from the scene when they arrived and found the burglary in progress. Defendant denied participation in the burglary, and accounted for the presence of his automobile by testifying that he ran out of gas and coasted into the station, left his car parked there, and went about his business on foot. A deputy sheriff testified that the officers never drive cars belonging to other people; that the Mercury was towed into a garage; that the next morning he and another deputy took defendant to the garage to identify the Mercury; that defendant got in the car, started it and ran it for fifteen minutes; that the deputy checked (apparently at the filling station at the time the burglary was discovered) to see if there was gas in the tank; that he turned on the ignition, which worked, and looked at the gas gauge with his flashlight; that there was a fourth of a tank of gas. Defendant's mother testified that she went to pick up the car at the garage to which it had been towed; that she arrived late that evening; that the car was out of gas; that the man at the station checked it by looking at the gauge and said it was empty, so she had gas put in the car. In rebuttal the deputy testified that later during the morning of the burglary he went to the filling station with defendant, who "got in the car and started it up," ran the car "for a little bit" and then shut off the motor.

After both sides had rested at the close of all the evidence the State asked for and obtained leave, over defendant's objection, to call Clyde French, a mechanic at the tow-in garage, as a witness to rebut the testimony of defendant's mother. French testified that the next morning two deputies brought a man in handcuffs to the garage; that one of the deputies got in the car, started the motor and then the men left; that later a woman came to get the car; that she paid French the tow and storage charges and French then "went back and got in the car and drove to the front of the building"; that the woman said, "I'd better put some gas in—I don't think I have enough gas to get very far," and that she asked for and he put in 50¢ worth of gas.

■ The point now sought to be raised was not mentioned in the motion for new trial. The only reference in the motion for new trial to the subject of gas is an allegation that *since the trial* defendant had discovered new evidence consisting of testimony of one Hughes "pertaining to the fact that defendant's automobile was out of gas." No mention having been made of the second point in the motion for new trial it has not been preserved for appellate review. Rule 27.20 (a), V.A.M.R. In any event, as appellant concedes, the trial court has wide discretion in reopening the case in chief after the close of all the evidence. "Any competent testimony that tends to explain, counteract, repel or disprove evidence offered by defendant may be offered in rebuttal of the defendant's testimony or evidence * * *." State v. Williams, 442 S.W.2d 61, 65 (Mo. banc 1968). No abuse of discretion is shown in permitting Clyde French to testify in rebuttal. No prejudice to appellant's rights has been demonstrated. Nor do we find any support in the record for appellant's contention that the trial court denied appellant the right to offer evidence in surrebuttal. Appellant had no further evidence and offered none; presented no names of any witnesses who might have counteracted Clyde French's testimony and made no request for time or opportunity to produce any such witnesses.

■ Counsel's third point: "The Court erred in the giving of Instruction No. 5 as to what constitutes Burglary II and punishment when in fact there was insufficient evidence to prove the elements of the crime of burglary in the second degree."

Instruction No. 5 required a finding that appellant broke into and entered Pettijohn's Service Station "in which divers goods, wares and merchandise were kept and deposited, with the intent * * *," etc. Appellant's point is that intent is an essential element; that there was no evidence to support a finding of intent to steal because there was no evidence that any goods, wares and merchandise were kept in the premises known as Pettijohn's Service Station; that in fact the operator testified in answer to a question whether he knew any reason why appellant would break into the station that there was no reason; that he always left the cash register open and the drawer open.

The following appears of record during the examination of the deputy sheriff:

"Q Will you describe to this jury what was inside the service station?

"A You mean fixtures?

"Q Any equipment or any goods or things of that kind.

"A In the first part there is a desk, cash register, some headlights, pumps, oil and different things; on the other side there is a phone on the wall and there is a soda pop machine, more oil and on the other side the door leads into the toilet which Mr. Pettijohn had opened the night before.

"MRS. DAY: I object to that statement and ask that the jury be instructed to disregard anything in regard to that statement.

"THE COURT: The jury is instructed to disregard the statement.

"MRS. DAY: I ask that the jury be discharged—this witness is trying to prejudice the jury against this defendant.

"THE COURT: The Court has already told the jury to absolutely disregard this last statement."

The objection and ruling of the court were obviously directed at the extraneous statement with respect to the door leading into the toilet "which Mr. Pettijohn had opened the night before." The court did not rule out the rest of the answer, which contained sufficient evidence of goods, wares and merchandise to support the verdict.

■ In his supplemental pro se brief appellant makes two points. First, he asserts as error that in sentencing him to ten years' imprisonment in response to the jury verdict the circuit court failed to accord him credit for 10 months' imprisonment endured in the county jail awaiting trial, and therefore the sentence was excessive. In State v. Whiteaker, 499 S.W.2d 412, 420–421 [11, 12] (Mo.1973), an appeal from a conviction of murder, this Court modified a 10-year sentence to give credit for time spent in jail awaiting trial. The Court held that § 546.615, RSMo 1969, V.A.M.S., as amended effective September 28, 1971 (mandatorily requiring allowance of jail time), applied to cases pending on appeal in which the judgment of conviction had not become final prior to September 28, 1971, and directed the department of corrections to credit against the sentence the number of days spent in jail awaiting trial. Assuming that Whiteaker applies in this case, i. e., that because this Court's 1957 judgment of affirmance was subject to be set aside and therefore this was a "pending" case on September 28, 1971, we are met with a situation in which a modification of the 10-year sentence in Peterson's case would be a vain and useless exercise. Appellant was received at the penitentiary December 17, 1956 and discharged therefrom November 19, 1962, after serving less than 6 years of the 10-year sentence. We are not informed whether the 10 months' jail time was considered as one of the factors entering into the calculation of the amount of time for which he was given credit. In any event, all that this Court could accomplish by modifying the sentence to credit jail time would be to shorten the specified time of imprisonment. Since appellant has long since been released from the penitentiary nothing can be accomplished by making such an order of modification. The question is moot.

Second, appellant contends that he was not accorded allocution, and thereby was denied an opportunity to make a mitigating statement in his own behalf before sentencing. He claims denial of due process, denial of equal protection of the law, and prejudice. This contention directly contradicts the transcript of the record which, on page 108, recites the journal entry showing that on December 9, 1956 defendant and his counsel were before the court; that the motion for new trial was taken up, argued and overruled; that defendant was informed of the jury verdict of guilty of burglary second degree; that it was his second offense; that his punishment was assessed by the jury at 10 years' imprisonment, and the following: *"and the defendant being now asked by the court to show if he had any legal cause to show why judgment should not be pronounced against him according to law, and failing to show such cause,"* was sentenced to 10 years' confinement in the penitentiary, etc. (Our italics.)

No error appearing the judgment of conviction is affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.