## STATE of Missouri, Respondent,

v.

## Edward HUDGINS, Appellant.

### No. 61877.

Supreme Court of Missouri,
Division No. 2.

Feb. 9, 1981.

Rehearing Denied March 9, 1981.

Cynthia S. Holmes, Sp. Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Nancy K. Baker, Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

Edward Hudgins, appellant herein, was charged in a two count indictment with the capital murder of Martha Fields and of Charles Berry, her son age six. He was found guilty by a jury of capital murder in the death of Martha Fields for which he was sentenced to life imprisonment without eligibility for probation or parole for fifty years, and he was also found guilty of murder in the second degree in the death of Charles Berry for which he was sentenced to imprisonment for life, the sentences to run concurrently.

At trial appellant was represented by a member of the staff of the 22nd Judicial Circuit Public Defender. Following the rendering of the verdicts, pursuant to Rule 27.20(a) then in effect, the trial court granted appellant a total of forty days in which to file a motion for new trial. Fifty-seven days thereafter appellant and his counsel from the office of the Public Defender, and a representative of the circuit attorney appeared before the trial judge. After a brief recitation of what had occurred the record shows the following:

> Judge: You elected not to file a motion for new trial, Mr. Zotos?
>
> Mr. Zotos [appellant's trial counsel]: Yes, your Honor, it will be—the points will be included in the appeal.

It thus appears that appellant's counsel purposely and intentionally failed to file a motion for new trial with the then intention of presenting the "points" of alleged error for the first time on appeal. A notice of appeal was then timely filed, and in accordance with the announced intention appellant has presented in his brief five allegations of trial error.

At the time the case was tried, October 1979, pursuant to what was then Rule 27.20 with exceptions not here applicable, trial errors not presented to the trial court in a motion for new trial were not preserved for appellate review. *State v. Meiers*, 412 S.W.2d 478, 481 (Mo.1967); *State v. Peterson*, 518 S.W.2d 1 (Mo.1974); *State v. Wright*, 515 S.W.2d 421 (Mo. banc 1974); *State v. Carr*, 499 S.W.2d 788 (Mo.1973). For the present applicable rule, see Rule 29.11(d). Rule 29.12(b), formerly Rule 27.-20(c), provides for the only exception which is that "Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." In appellant's brief there is no request that the allegations of error be reviewed under this rule.

There was no motion for new trial filed, and therefore the allegations of error in appellant's brief have not been preserved for appellate review. When we have a deliberate and intentional disregard of the requirements of then Rule 27.20, and what is now Rule 29.11, requiring a filing of a motion for new trial, as we have in this case, we decline to exercise our discretion to review the alleged assignments of error pursuant to the "plain error" rule.

Without prejudice to appellant's right to seek appropriate relief, if any, pursuant to Rule 27.26, the judgment is affirmed.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the court.

WELLIVER and HIGGINS, JJ., concur.

SEILER, P. J., concurs in separate concurring opinion filed.

SEILER, Presiding Judge, concurring.

I concur in the result reached, but this is another case, as was *State v. Holmes*, 609 S.W.2d 132 (Mo.1980), where in order to enable us to carry out our statutory duty of determining whether death sentences are "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant", § 565.-014.3(3) RSMo 1978, our opinion must contain a statement of the facts, even though the penalty assessed was life without parole or probation for fifty years, rather than death. Otherwise, as pointed out in *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 1767, 64 L.Ed.2d 398 (1980), as the law is built up in this area, there is no way to distinguish a capital murder case in which the death penalty is imposed from the many cases in which it was not. We, as well as counsel, must be aware of similar cases in which life imprisonment without probation or parole for fifty years was imposed as well as those in which death was imposed.

Unless our opinions in capital murder cases contain the facts there is no way trial judges or defense counsel can know whether the sentence is disproportionate to sentences imposed in similar cases. If the facts are not set forth in our opinions, trial judges or lawyers over the state will be unable to determine whether or not their case and the circumstances of the crime and the defendant are similar to other capital murder cases and the sentence there imposed. Counsel will not have the material needed to develop their position as to the excessiveness or disproportion, if so, of the sentence where death is selected. In order for the review system to work properly, the bench and bar, as well as this court, must have means to determine which killings are similar in capital murder cases. Otherwise there is no way to meet the constitutional obligation to see that similar results are reached in similar cases. This can be accomplished only by getting the facts out where they can be seen by all. The best way to do this is to put the facts in our opinions. ·

In the case before us, defendant was charged with two counts of capital murder. He was convicted on one count of capital murder and one count of murder in the second degree. Having been found guilty by the jury of capital murder on Count I, he was sentenced to life without parole or probation for fifty years on the capital murder conviction. He was sentenced to life on the second degree murder conviction, the sentences to run concurrently.

The facts as to the crimes are as follows: On April 29, 1978, police officers were summoned to the victim's apartment building for the third time that evening. The victim, Martha Fields, a 42-year-old, black female, was the landlord of the building in which both she and defendant lived. She complained to the officers that defendant was playing music too loudly and that he owed past rent. One of the officers went into defendant's apartment to tell him to turn his radio down and to inform him that the landlord was making a complaint about his back rent. Defendant, a 27-year-old, black male, was angry, cursing and saying that he knew that he couldn't be evicted from the apartment. By the time the officers left, however, defendant appeared to have calmed down.

Approximately 30 minutes to an hour after the officers left, defendant told the woman who lived with him, Claudia Marshall, to knock on the front door of the apartment building. When the victim opened the door, defendant, standing behind the door wearing rubber gloves, grabbed her and threw her to the floor in the hallway. Charles Berry, the victim's six year old son, ran to the neighbor's house to call the police, returned, and went back into his apartment.

Defendant, objecting to raising of the rent, was atop the victim, who was still on the hallway floor. The victim told defendant "You can have the place," and defendant replied that he did not want it. Claudia Marshall was in the victim's apartment when the conversation between defendant and the victim stopped. She went into the hallway and saw the victim lying there strangled and stabbed, with blood on the floor and wall.

Defendant then entered the victim's apartment where he strangled the victim's child with an extension cord and then placed his body face down in the bathtub full of water.

Defendant then moved the victim's body from the hallway to her apartment. He instructed Claudia to clean up the blood in the hallway.

An autopsy revealed that the victim, Ms. Fields, had been stabbed 21 times and had died from a loss of blood. Three of the stab wounds were fatal in nature. One passed through the heart; two others passed through the liver. The wounds were up to about seven inches in depth. There was also a superficial stab wound at the back of the head, a V-shaped laceration approximately one inch in length above the left eyebrow, lesions under the scalp where the head had been struck with sufficient force to crush and split the scalp, an abrasion on the left shoulder, five puncture wounds— one on the neck, two on the shoulder, one on the right breast and one on the chest. There were numerous contusions about the body, left hand, knuckles and left forehead; multiple large areas of contusions on both thighs.

There were large brown abrasions on the neck of the boy, Charles Berry, as well as a band of abrasions, one and a half inches wide, probably made by a ligature one sixth of an inch wide. His death was due to strangulation.